In the Matter of the Estate of CHARLES G. STRANDBURG, Deceased.*

Surrogate's Court, Kings County, January 20, 1931.

*William Lurie* [*David S. Konheim* of counsel], for the Commercial Casualty Insurance Company.

*Joseph Epstein*, in person.

WINGATE, S. The further hearing in this application to compel Joseph Epstein to make restitution of the sums alleged to have been received by him from the funds of this estate has now been had and the entire question is now before the court for decision.

---

* See, also, 138 Misc. 732.

This later hearing developed only a single additional factual point of materiality, namely, that at the time the stipulation was entered into between this respondent and the then attorney for the Swedish consul, purporting to agree upon the division of the estate, the Swedish consul did not and never since has, represented all of the next of kin of the deceased. In consequence, even had that stipulation been binding upon the Swedish consul himself, which it was not, it would have been entirely worthless for the purpose of effecting a binding division of the estate.

The contentions of the respondent are twofold, namely: *First*, that this is a proceeding to punish him for a contempt as a result of his disobedience of the order of August 22, 1925; and, *second*, that this court is without jurisdiction to compel him to make restitution of that portion of the funds of this estate which unquestionably came into his hands with full knowledge of its character and without legal warrant. In the development of this point, it is his position that such diversion of a portion of the funds of an estate in this court resulting from the joint action of one officer of this court, namely, the administrator of the estate, and of another officer of this court, in the person of an attorney practicing before it in this matter, must be sent to another tribunal for decision.

The first position is abundantly refuted by the language of the order to show cause by which this proceeding was instituted. This directed this respondent to " show cause before this court  *  *  * why he should not be directed to pay to Gustave Anderson, as the Administrator of the Estate of Charles G. Strandburg, deceased, for the account of this Estate, the sum of nine hundred thirty-seven ($937.00) Dollars with interest, or in default of such payment, why he should not be punished for contempt of court, and why such other and further relief should not be granted as may be just."

Any person reasonably conversant with the ordinary connotation of the English language must understand from this direction that the essence of the proceeding was to compel such restitution. The direction to show cause why he should not be punished for contempt of court if he failed to comply with an order to make repayment, is pure surplusage, since such a result would follow. There is no language in the order to show cause in any way referring to the previous order of this court made August 22, 1925. If the respondent had violated this August, 1925, order with legal notice thereof, he would be liable to punishment for contempt quite independently of his obligation to refund sums diverted from the estate.

At the first hearing some evidence was offered as tending to show knowledge by the respondent of the existence of the August twenty-second order. This was admissible under the general prayer for

relief, but the court ruled at the close of the hearing that it was insufficient to form the basis of a direct contempt proceeding. This in no way invalidated or affected the primary purpose of the proceeding which was for the determination of the obligation of the respondent to refund the sum of $937 and interest.

The second question, of the jurisdiction of this court to direct one of its officers to pay back sums wrongfully diverted from one of its estates, is in the opinion of this court capable of even more ready solution. As was said by Chief Judge CARDOZO, writing for the unanimous court in *Matter of Raymond* v. *Davis* (248 N. Y. 67, at p. 72): " ' Concentration of jurisdiction as to decedents' estates ' (per FOLEY, S., in *Matter of Haigh, supra*) is the purpose clearly revealed in the statutory scheme. ' The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy ' (per THOMAS, J., in *Matter of Coombs*, 185 App. Div. 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked."

The proceeding at bar is, in essence, a proceeding to follow trust funds and to enforce a fiduciary relationship of this respondent in respect to the same. It is, therefore, equitable in its nature appertaining to the particular assets of an estate in this court.

In *Matter of Seaman* (205 App. Div. 681) the Appellate Division of this department, in unanimously overruling a similar contention, said (at p. 686): " With this contention I also disagree, for under the present Surrogate's Court Act [Laws of 1920, chap. 928] that official has power to try all questions, legal and equitable."

The contention of the respondent in this regard, if sound, would be a subversion of administrative justice to unessential procedure of a nature inevitably tending to bring courts and the law into popular disrepute. The malfeasance of this respondent was in his capacity as an officer of this court in respect to a fund over which this court had exclusive jurisdiction. His acts and defenses are capable of and have received complete exposition and consideration in this tribunal, and, as stated by Chief Judge CARDOZO, a remission of the matter to another forum would be equivalent to a denial of justice.

The respondent, at the last hearing, stressed the point that in an action in the City Court against the petitioner herein, the latter asserted as one of its defenses the alleged compromise settlement effected by this respondent with the attorney for the Swedish

consul, claiming an estoppel as a result. Such a contention loses sight of every fundamental legal conception of estoppel as well as disregarding the fact that there can be no estoppel against the court in remedying a wrong committed by one of its officers.

Furthermore, it is somewhat difficult to see why the position of the surety in this regard is any more inconsistent than that of the respondent who has brought this action on behalf of the new administrator on the theory that such settlement was and has been determined to be invalid and worthless.

On one and only one question tentatively determined on the first hearing, has the court changed its opinion as a result of the later one. This concerns the $335 alleged to have been paid to Mr. Epstein by Strandburg on September 25, 1925. Respecting this, Strandburg testified categorically that he gave Epstein this sum from the $670 withdrawn, and the latter has emphatically denied it. The court, at the close of the former hearing, felt that this conflict must be resolved in favor of the respondent as a result of the former perjured statements of Strandburg. The later hearing and the further appearance and demeanor of the two men on the witness stand, coupled with the demonstrated surrounding circumstances, have caused the court to alter its opinion in this regard. Mr. Epstein's testimony was evasive to a degree. His preliminary statement to the court that he never received a nickel from the estate followed by his admission of receipt of $400 from the funds withdrawn by Strandburg on the check prepared by himself on October 30, 1925, might, perhaps, be explicable on the theory that he felt that title to the money had passed to his client in spite of his knowledge respecting the true facts; but his repeated emphatic assertion at the second hearing that he had no knowledge of the name of the bank in which Strandburg kept the funds prior to September, 1925, after his direct statement at the first hearing (S. M. p. 102) that they were in the Bank of Manhattan, cannot be considered other than as a reckless disregard of the truth. Furthermore, additional observation of the two men has convinced the court that whereas Strandburg, smarting under a sense of injustice at being deprived of a share in the estate of his foster father for whom he had apparently sacrificed much, might and no doubt did, lay claim to an inheritance to which he had no legal right, yet he did not have the mentality to concoct and maintain throughout cross-examination a story from which, under the existing circumstances, he would derive no benefit. With the characteristics displayed by Mr. Epstein what they were, it is furthermore extremely improbable that he would have permitted the much weaker minded Strandburg to deny him that half of the

money withdrawn on September twenty-fifth, which, as between them, his retainer *signed the same day* entitled him. Weighing the probabilities and the manner and content of the testimony of the two witnesses, the court concludes that Strandburg's testimony is entitled to the greater credence. It follows that Mr. Epstein is chargeable with this $335 in addition to the $400 payment which he received on October 30, 1925. Both sums will bear interest from January 30, 1930, for the reasons stated in the former opinion.

This court, therefore, finds and determines that the respondent, Joseph Epstein, shall repay to the estate of this decedent the sum of $735, with interest from January 30, 1930, and that he pay the costs and disbursements of this proceeding.

Enter decree on notice accordingly.