## RHODERICK et al. v. SWARTZELL et al.

### No. 5729.

Court of Appeals of the District of Columbia.

Argued March 15, 1933.

Decided May 29, 1933.

Rehearing Denied June 16, 1933.

E. Hilton Jackson, Wm. E. Richardson, and George C. Shinn, all of Washington, D. C., for appellants.

Louis Titus and Charles L. Frailey, both of Washington, D. C., for appellee Shoreham Inv. Co.

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and John E. Larson, all of Washington, D. C., and Albert Wright, of New York City, for appellees Metropolitan Life Ins. Co. and Dodge and West.

Joseph D. Sullivan, of Washington, D. C., for appellees Blair, Peyser, and Doyle.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices, and GRAHAM, Presiding Judge of United States Court of Customs and Patent Appeals.

GRONER, Associate Justice.

Appellants, who were plaintiffs below, brought this bill in equity for the cancellation of the release of a deed of trust. The defendants named in the bill are Luther A. Swartzell, Edmund D. Rheem (individually and as trustees), Shoreham Investment Company, a corporation; John H. Holmead, J. Newton Brewer, Trustee; Metropolitan Life Insurance Company, a corporation; Clarence Dodge, trustee; Harry Wardman, Thomas P. Bones, Swartzell, Rheem & Hensey Company, a corporation; Henry P. Blair, Julius I. Peyser, and Michael M. Doyle, receivers; and Huntington Terrace Corporation. The trial court dismissed the bill, and this appeal was taken.

The facts as found below, condensed as far as permissible to an understanding of the issue, are as follows: Plaintiffs in the latter part of 1928 purchased from Swartzell, Rheem & Hensey Company negotiable promissory notes of the total aggregate value of $10,500. The notes were dated August 1, 1928, and were made by Harry Wardman and Thomas P. Bones to the order of John H. Holmead, who indorsed them without recourse, and were payable five years after date with interest at the rate of 6 per cent. They were part of an issue of 2,790 of such notes aggregating the sum of $2,250,000 secured by first deed of trust of like date, wherein Wardman and Bones conveyed to Luther A. Swartzell and Edmund D. Rheem, trustees, the property now known as the Shoreham building, located at the corner of 15th and H streets, Northwest, in the city of Washington. The deed of trust securing the notes was released of record July 17, 1930, but the notes held by plaintiffs were not then paid nor have been since. Plaintiffs sued to have the release set aside and the deed of trust securing the notes reinstated as a first lien on the property.

Swartzell, Rheem & Hensey Company had for many years conducted a real-estate mortgage investment business with offices in the city of Washington. It had thousands of customers throughout the United States, and was regarded as an institution of the highest reputation for integrity, honesty, and financial strength. Plaintiffs had been customers of the company since 1925, and had received from it the notes sued on in exchange for other notes which had matured. They relied entirely upon the representations of the Swartzell Company in purchasing the notes and made no examination of the deed of trust. On August 1, 1928 (the date of the deed of trust), the Shoreham property was owned by Harry Wardman and Thomas P. Bones. They planned the erection of a large modern office building on the site, and the deed of trust and notes dated August 1, 1928, were made to obtain a loan for this purpose. The trustees named in the trust were Swartzell and Rheem, and the deed contained provisions requiring the payment of principal and interest to be made at the office of the Swartzell Company in Washington, together with the privilege of anticipation of principal at any time before maturity upon payment of interest to date of payment and two months' additional; and there was this further provision: "It is mutually covenanted and agreed by and between the respective parties hereto that the said full payment of principal and interest, as hereinabove provided, at the office of Swartzell, Rheem and Hensey Company in the city of Washington, District of Columbia, shall constitute payment of said notes respectively and shall stop interest thereon from date of said payment at said office, and * * * the said parties thereto of the second part [the trustees], or the trustee acting in the execution of this trust, shall thereupon have power to release and reconvey said land and premises, as aforesaid, without the presentation or cancellation of said notes or any of them."

On October 5, 1929, the building operation had progressed nearly to completion, and on that date Wardman and Bones conveyed the property to Fred H. Van Vranken and

Edward I. Wissman as joint tenants. The two latter took title without any financial interest therein but actually for the Swartzell Company. January 9, 1930, Van Vranken and Wissman conveyed to Swartzell and Rheem, trustees, to secure a promissory note of $300,000 payable to the order of Charles' W. Handy one year after date with the right of anticipation. Handy was a clerk in the office of Swartzell Company, and indorsed the note, which was thereafter negotiated by Swartzell Company and on March 7, 1930, Patrick J. Hurley and the Swartzell Company entered into a contract whereby the former agreed to exchange a building known as the Hurley-Wright building, owned by Hurley and his wife and estimated to be worth a million dollars, subject to a mortgage of $260,000, for the Shoreham property, subject to the August 1, 1928, deed of trust for $2,250,000. The Swartzell Company agreed to complete the Shoreham building by June 30, 1930, to pay interest and taxes to the date of transfer, to pay certain brokers' commissions, and to refinance the $2,250,000 mortgage at its maturity on August 1, 1933, either by renewal thereof or replacement by a new loan of $2,000,000, the balance of $250,000 to be paid by Hurley. After this contract was made, Hurley associated with him on an equal footing Joseph I. Cromwell, and thereupon Hurley and Cromwell incorporated Shoreham Investment Company under the laws of Delaware, and became and still are equal owners of its entire capital stock.

The Shoreham building had not been entirely completed, as the Swartzell Company had contracted it should be, on June 30, 1930. Consequently about this time the investment company, acting through Hurley and Cromwell, agreed with Swartzell Company to accept a bond for the completion of the building and to a modification of the contract with relation to refinancing the $2,250,000 loan at maturity. The new agreement contemplated that the Swartzell Company would at its own expense arrange at once a new loan of $2,000,000 on the Shoreham building, the investment company to pay $150,000 in cash instead of the $250,000 provided under the March 7, 1930, contract (the other $100,000 being absorbed by Swartzell in order to get the contract closed on the new basis). The method agreed was that Swartzell Company would arrange a loan of $1,600,000 to be secured by a first deed of trust (to be made by investment company) and accept a $400,000 note to be secured by second trust; investment company to pay $150,000 in cash and the Swartzell Company to find the additional amount to provide the balance necessary to pay in full the two outstanding mortgages. Thereafter the Metropolitan Life Insurance Company of New York agreed to make the $1,600,000 first mortgage loan on the property. The investment company (the Hurley-Cromwell Company) employed the District-Lawyers-Washington Title Insurance Companies of Washington to examine the title, and the Metropolitan Insurance Company employed the New York Title & Mortgage Company as its representative.

In the accomplishment of this plan, Van Vranken and Wissman conveyed the Shoreham property to Shoreham Investment Company. Hurley executed and delivered to the Washington title company a deed to Van Vranken and Wissman conveying to them the Hurley-Wright building, and Hurley and Cromwell gave the title company their check for $150,000. The New York title company thereupon wrote to the Washington title company a letter inclosing the Metropolitan Insurance Company's check for $1,600,000, less the amount $43,354.20 withheld to pay outstanding taxes and charges. The check—as also the check of Hurley-Cromwell—was made payable to "Swartzell, Rheem & Hensey Co., and Luther A. Swartzell and Edmund D. Rheem, trustees, under deed of trust dated August 1, 1928, * * * for account of holders of the notes described in said trust." The Washington title company was instructed to deliver the two checks "when, as and if an amount is on deposit in said account which together" with said checks will equal "the sum of $2,250,000 plus accrued interest and prepayment interest of two months in advance, as provided in said deed of trust." And the note secured by the second mortgage of $300,000 was surrendered and canceled. The notes for $400,000 of the new second mortgage were made by investment company and were to be delivered as directed by Swartzell Company.

The assistant secretary and treasurer of the District title company, having received the two checks mentioned above on July 16th, went to the Riggs National Bank in Washington, where he met the vice president of the bank and Swartzell and Rheem. The two latter indorsed the checks both in behalf of Swartzell Company and themselves as trustees, and a special account was thereupon opened by the bank entitled—"Swartzell, Rheem & Hensey Company and Luther A. Swartzell and Edmund D. Rheem, trustees, under deed of trust dated August 1, 1928, and recorded in Liber 6194, folio 347 of D. C. Land Records, for account of holders

of notes described in said trust." The checks were deposited in this special account and the bank thereupon informed the title company that the amount of the two checks so deposited, with moneys already on deposit in that account, totaled the sum of $2,334,750, which latter sum was the amount necessary to pay off the notes secured by the first deed of trust with interest in accordance with the trust provisions. Neither the title company nor the investment company nor Hurley and his associates had any knowledge as to the source of the amount on deposit in the special account over and above the two checks then and there delivered to the trustees and Swartzell Company and deposited therein. The $300,000 second deed of trust was at the same time duly released and the note canceled, and on July 17, 1930, the release of the deed of trust for $2,250,000 was duly recorded.

The circumstances under which Swartzell Company obtained the additional money to pay off the first mortgage notes is found and stated by the court below as follows: "On the morning of July 16, 1930, Edmund D. Rheem called upon Robert V. Fleming, president of the Riggs National Bank, and told him that he, Rheem, had sold the Shoreham Building to Hurley and Cromwell and pending the consummation or settlement of that transaction he needed to borrow about $635,000, offering as collateral first mortgage notes amounting ·to over $850,000 secured on the Westchester Apartment House, with which Fleming was familiar, which security was satisfactory to the bank. Rheem stated he wanted a temporary loan for four or five days. Rheem stated to Fleming that he would be able to pay the loan when due, but did not discuss with Fleming where he was to get the money to repay the loan. Fleming agreed to make the loan, and there was nothing in Rheem's conversation, attitude, or in the circumstances connected with the loan that aroused any suspicion in Fleming as to the bona fide character of the loan. The loan was then made in the form of two promissory notes, one * * * for $380,000 and the other * * * for $255,000. * * * The proceeds of these two notes aggregating $635,000 were, on July 16, 1930, deposited in the special account in Riggs National Bank."

This deposit, together with the two checks delivered by the title company made up the total which, as we have already stated, was sufficient to take up and pay in full all of the outstanding first mortgage notes with interest.

When all of these things were done, the Swartzell Company credited on its books to each holder of notes secured in the first deed of trust, the amount each was entitled to receive of principal and interest, and all but a little more than $800,000 of the noteholders received their money, but the latter were not paid and have not been paid, and in January, 1931, the Swartzell Company filed a voluntary petition in bankruptcy. The money which had been deposited in the special account for the holders of all of the first mortgage notes was, to the amount of eight hundred odd thousand dollars, converted by the Swartzell Company to its own purposes, but none of these facts, either with relation to the manner of obtaining the money or its subsequent misuse, were known to any of the other parties to the transaction. The Metropolitan Company, which furnished the money secured under the present first mortgage of $1,600,000, "had no contractual relations with Swartzell, Rheem & Hensey Company or Edmund D. Rheem or Luther A. Swartzell, individually or as trustees, regarding the sale or exchange of the Shoreham Building for the Hurley-Wright Building, and there was no evidence that said Insurance Company had any knowledge of the ownership of the Shoreham Building property other than the land records disclosed." The notes secured under the $400,000 second trust now outstanding made by the investment company were sold to the Huntington Terrace Corporation for value without knowledge of any of the prior transactions and in reliance on the record title.

The trial court, as the result of its findings of facts, decided that the indebtedness of $2,250,000 secured by deed of trust of August 1, 1928, was fully paid in accordance with its terms—that Swartzell and Rheem, trustees, were authorized and empowered under the terms of the deed to execute and deliver the release dated July 16, 1930 (recorded July 17th), and that said release was and is in all respects sufficient and valid in the discharge of the lien of the trust deed of August 1, 1928, that the trust to secure $1,600,000 made by the investment company on account of the money furnished by the Metropolitan Life Insurance Company was and is a valid first lien· on the property, and that the second deed of trust of $400,000 was and is a valid deed of trust second only to the trust to secure the insurance company. The court held plaintiffs not entitled to relief and dismissed the bill.

While all the parties concerned in this

transaction are made parties defendant, it should be borne in mind that the sole object of the bill is to have the court declare void and of no effect the release (recorded July 17, 1930) of the deed of trust dated August 1, 1928, and also that the court decree the latter deed in full force and effect and a lien prior to the trust to secure the Metropolitan Life Insurance Company and the trust to secure the $400,000 of second trust notes.

The notes secured by the last-mentioned trust are held by Huntington Terrace Corporation, which acquired them in good faith and admittedly without notice of any of the infirmities claimed as to the trust securing the insurance company, and counsel for appellants have now abandoned the claim of invalidity as to these. It will not be necessary, therefore, to refer to them again.

As to the lien of the insurance company, appellants insist that there was no payment in fact of the debt due under the original deed of trust, and that the deposit of the funds necessary to pay off the $2,250,000 of notes, with interest, was an invalid substitute for the payment required under the terms of the trust and did not justify the release. They further insist that the agency created in the Swartzell Company to receive payment for the noteholders was terminated and canceled because the Swartzell Company after the date of the deed of trust had become owners of the security (the Shoreham property) and because, by contract with investment company, it (Swartzell Company) agreed, it is claimed, that it would pay the indebtedness secured by the deed of trust and would complete the building and refinance the property, all of which created interests diverse from and adverse to its obligations and duty as a collecting agent, and finally, that the deposit of the money necessary to discharge the first trust in the manner in which it was made constituted a departure from the terms of the trust and hence did not constitute payment in accordance therewith. We shall notice these points together.

As we have seen, the trial court found not only that the insurance company had no contractual relations with Swartzell Company regarding the sale or exchange of the Shoreham building for the Hurley building, but likewise that there was no evidence that insurance company had any knowledge of the ownership of the Shoreham property other than the land records disclosed. The court also found that the insurance company was wholly without knowledge of the manner or circumstances under which Swartzell Company had borrowed the money from Riggs Bank to complete the amount of the special deposit to cover the indebtedness due under the trust deed of August 1, 1928, and further that insurance company had no knowledge, actual or constructive, of the improper and unlawful diversion of a part of that fund subsequent to its deposit.

These findings of fact are binding on this court and may not be reviewed here unless, upon an examination of all the evidence, they appear to be clearly and manifestly wrong. Stanley v. Schwalby, 162 U. S. 255, 16 S. Ct. 754, 40 L. Ed. 960; Lawson v. United States Company, 207 U. S. 1, 28 S. Ct. 15, 52 L. Ed. 65; Bowen v. Chase, 98 U. S. 254, 25 L. Ed. 47; Newell v. Norton, 3 Wall. 257, 18 L. Ed. 271; Allen v. St. Louis Nat. Bank, 120 U. S. 20, 7 S. Ct. 460, 30 L. Ed. 573—and mere suspicious circumstances will not require the decision of the lower court on the evidence to be disturbed. Case v. Marchand, 154 U. S. 642, 14 S. Ct. 1197, 38 L. Ed. 1090.

We have been at pains to examine the evidence carefully, and we find nothing there to justify us in upsetting the findings of the trial court. The insurance company was applied to for a loan of above a million and a half dollars on the credit of investment company, purchasers of the property, and on the security of the property. They employed a title company to search the records in order to determine if the proposed lien in their favor would be prior to any and all other incumbrances on the property. The examination by the title company disclosed that Wardman and Bones, the original owners of the property, had conveyed to Wissman and Van Vranken and that the two latter had conveyed to investment company. The title of investment company was subject to two deeds of trust, one of August 1, 1928, to secure the $2,250,000 of notes, the other to secure a note of $300,000 made January 9, 1930, by Wissman and Van Vranken. By reference to the terms of the first trust they found there the appointment of Swartzell Company as agents of the noteholders to receive payment on their behalf either before or at the maturity of the notes, and like authority to the trustees to release without production of the individual notes marked paid and canceled. As to the second deed of trust there was a similar provision, but that note was held by the Riggs Bank and was procurable on demand and payment. The first trust notes were scattered over the country in the hands of a thousand holders. There

was nothing in the land records to put the insurance company or its representative, the title company, on notice that Wissman and Van Vranken held title to the land as trustees for the Swartzell Company.

And so in this state of the record, insurance company in good faith advanced the money secured by its trust deed, relying upon the authority of Swartzell Company and the trustees, the one to collect and distribute the principal and interest secured by the prior deed of trust, and the others to release the land from its operation. Not only is this° true, but in the manner in which the transaction was closed there is a complete absence of any knowledge on its part of any wrongdoing on the part of Swartzell Company or the trustees but in all that was done the exercise of commendable prudence in seeing to it that the money necessary to pay the noteholders under the original trust was actually paid in cash to the agents provided by that instrument to receive it, and, so paid, duly earmarked in a special account in a reliable bank for the use and benefit of such noteholders.

■■■ In view of these facts, it is perfectly obvious the loss plaintiffs and other noteholders sustained was not the result either of an improper payment or an improper release, for both payment and release were precisely in accordance with the terms of the trust indenture under which they claimed. Their loss occurred as the result of what subsequently happened, and this subsequent happening was the unlawful act of their own agents. Some of the noteholders, aggregating in amount approximately two-thirds of the total issue, received their money. All of them, including plaintiffs, received credits on the books of the agent—Swartzell Company— but plaintiffs and others who were less vigilant or less fortunate, as the case may be, sustained the loss of which they now complain wholly as the result of the unlawful diversion of the fund which in their purchase of the notes they had agreed the Swartzell Company should collect and should disburse. On the other hand, insurance company took every precaution which was reasonable to protect its interests. Its obligation in the circumstances went no further. It had no reason to assume that Swartzell Company would betray its trust, but it was careful to see that the money to discharge all the indebtedness prior to the lien it was seeking was placed where the parties in interest directed it to be placed, and being so placed, the insurance

company had no reason to anticipate it would not be honestly disbursed. The money being paid to the agent entitled to receive it and the trustees in the mortgage to secure it having discharged the duty incumbent on them in the circumstances, and the old second mortgage being released, the title to the property was clear of lien, and the insurance company had the right to rely upon the releases and to insist upon its own lien as a first trust upon the property. See Williams v. Jackson, 107 U. S. 478, 2 S. Ct. 814, 27 L. Ed. 529, Martin v. Poole, 36 App. D. C. 281.

In saying what has just been said, we have not lost sight of the fact that it is claimed by plaintiff that the checks for the money furnished by the insurance company and the investment company were payable to both Swartzell Company and Swartzell and Rheem, trustees, whereas the deed of trust provided no more than that the former, as agent, should receive it. But we do not think this fact affects the situation. The trustees, as the record shows, immediately checked out the fund to the agents and relinquished any right of their own to its control. But the manner of payment had given them notice of the fact of payment, and doubtless that was precisely what was intended. There is no suggestion, and certainly no ground for one, that the manner of payment in any respect contributed to the unfortunate sequence. The trustees represented both parties in carrying out the terms of the trust. They were no more agents of the one than the other. But without regard to this, as we have already noted, they, as soon as the money was paid, caused its transfer to Swartzell Company, and that company received it, as the deed provided, in full discharge of the indebtedness secured. Without more, therefore, it is apparent that the prayer of the bill that the mortgage of the insurance company should be subordinated to the released mortgage under which plaintiffs claim, ought not to be granted.

This leaves only for consideration the question in relation to the status of the investment company as owner of the property. If the bill be construed as intended to procure a decree that the released trust be reinstated—if not prior to that of the insurance company and the Huntington Terrace Company—then as a lien on the property only subordinate to those two trusts, it becomes necessary to consider the question whether or not investment company is chargeable with notice of the fraud committed by Swartzell Company.

It is argued by plaintiffs that since Hurley and his associate, as the representatives of investment company, knew that Wissman and Van Vranken were not the true owners of the property, but that Swartzell Company was, they thereby were charged with notice of the conflict of interest between Swartzell Company and the noteholders which disqualified the former to continue to act as agent for the latter. This proposition assumes that because Swartzell Company, subsequent to the making of the original deed of trust, became itself owner of the property, it thereby became wholly disqualified to act as agent for the noteholders. We do not think this proposition sound. Swartzell Company in taking over the property in the names of its employees Van Vranken and Wissman did not obligate itself to the payment of the mortgage indebtedness. In none of the deeds transferring the property did it assume or agree to discharge the trust. What it did was to take title subject to the trust. The notes secured by the trust were in nowise affected by this transfer of title, nor was the agency established in Swartzell Company to receive payment on behalf of the noteholders thereby revoked and annulled.

Doubtless a court of equity would, in the circumstances we have described, upon the application of a party in interest, have discharged the agent, because the change of position from the original status would have been enough, and this because a court of equity when applied to will ordinarily discharge a party in a fiduciary relationship who has assumed a position in which his own interests may be antagonistic to his trust. On this same principle it has many times been held that one who is the secret owner of a note secured by a mortgage in which he is trustee will be required by a court of equity to account for the profits realized in a sale to himself. But there is no principle of law which forbids one who is an agent of both the maker and the holder of a note from receiving payment and executing a complete release. Shaw v. Bank (Tex. Com. App.) 231 S. W. 325, 326. But here, as we have seen, Swartzell Company was not obligated to pay the debt nor had it assumed the duty of paying. It held the property subject to the trust, and its interests and that of the noteholders were adverse only to the extent that it failed to discharge its duty to the noteholders honestly. Its opportunity to embezzle the fund was no greater in the last case than in the first. If, as owner of the property, it had, without receiving the money due to the noteholders, released the deed of trust in order to claim title in itself, a court of equity would at once have set aside the release and reestablished the trust. But on the other hand, if as owner of the property, it had produced the money necessary to pay off the trust indebtedness and had exhibited to the trustees evidence of this payment to itself as agent of the noteholder, it is going very far to say the trustees would have made themselves personally liable if, upon making the release as required by the provisions of the trust, the agent had subsequently embezzled it. And if this is true, it would be going even farther to say that investment company, as purchaser of the property, should be made to answer for the default of Swartzell as agent only because in the transaction with relation to the sale it had knowledge of the fact of the subsequent purchase by Swartzell Company of the property.

In this view, we think it is unnecessary to attempt to state a case which would justify the relief plaintiffs ask. It is enough, we think, to say that none of the circumstances shown here are sufficient to impose on investment company the duty of doing anything more than the statement of facts found by the trial court show it did. It saw to it that all the money necessary to pay the notes to the holders was paid to the agent authorized to receive it. It saw a fund established in bank earmarked for the use of such noteholders. It had no reason to suspect betrayal of the trust by the agent, and it was not in such a case required to go further. The subsequent embezzlement of the fund by the Swartzell Company was the immediate cause of the loss to plaintiffs, and if they are the innocent victims of this wrongdoing, so also would the investment company be if it had to bear the loss. And so in recognition of this latter fact, and without regard to the questions we have discussed and even if our conclusion in relation to their legal effect were otherwise, we are brought face to face with a rule which a court of equity always applies, viz, where confronted by the problem which of two innocent persons must bear a loss, to impose it on the one who made it possible. Here the facts show that plaintiffs placed their money with Swartzell Company for investment. That company, as their agent, chose with their approval the form of investment, and when the same matured, apparently with like authority, invested again in their behalf. They relied upon the standing and reputation of their agent, and placed themselves in its hands. So far as the record shows, they made no investigation of their own to determine either the nature of their

security or the contract under which it was held. Their confidence in Swartzell Company was complete. It was their agent to receive their money. When this transaction was completed, the money paid their agent and the release recorded, they continued to receive their interest for more than a year and up to the time Swartzell Company became bankrupt. That their confidence was imposed on is their own misfortune. They constituted Swartzell Company agent to collect their money, and on payment to it authorized release of the trust. They remained silent long after the transfers were completed and when at least constructively they had notice that the security of their debt had been released. As between the two, therefore, the degree of negligence is preponderantly against plaintiffs. All that the record shows as to investment company is that it knew that the record title holders of the land were the nominees of the Swartzell Company and therefore answerable to them. In all else they were vigilant in seeing that a sufficient special fund was created and earmarked with the claim of the noteholders. This is certainly not enough in our opinion to justify us in saying that as between these two innocent parties the investment company should be the one to suffer, for it was the plaintiffs and those in like situation with them whose confidence and reliance gave the wrongdoer the means whereby the wrong was done. See National Co. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241; In re McIntyre & Co. (C. C. A.) 181 F. 955; Gray v. Jacobsen, 56 App. D. C. 353, 13 F.(2d) 954, 48 A. L. R. 583.

In view of what we have said, it follows that the lower court was right in its decision and should be and is affirmed.

Affirmed.