**GARRITY v. DISTRICT OF COLUMBIA et al.**

No. 6365.

United States Court of Appeals for the District of Columbia.

Decided Aug. 31, 1936.

Rehearing Denied Oct. 26, 1936.

William C. Sullivan, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., John W. Fihelly, Asst. U. S. Atty., E. Barrett Prettyman, Corp. Counsel, and Vernon E. West, Asst. Corp. Counsel, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia dismissing a bill of complaint filed by the appellant, plaintiff below, against the appellees, defendants below—the District of Columbia, the Zoning Commission of the District of Columbia, the Commissioners of the District of Columbia and the Inspector of Buildings of the District of Columbia. The relief sought was: A mandatory injunction compelling a change of zoning of the appellant's property from a zoning district in which erection of apartment houses is forbidden, to one in which that is not forbidden; a mandatory injunction compelling the Building Inspector and his successors in office to issue permits for building operations for apartment houses upon the appellant's land as if it had never been zoned in a district forbidding them; and a perpetual injunction restraining enforcement against the appellant's land of zoning regulations forbidding apartment houses.

By the Act of March 1, 1920, 41 Stat. 500 (D.C.Code 1929, T. 25, § 521 et seq.), Congress passed "An Act To regulate the height, area, and use of buildings in the District of Columbia and to create a Zoning Commission, and for other purposes." The provisions thereof pertinent to this case are:

"Sec. 2. That within six months after the passage of this Act and after public notice and hearing as hereinafter provided, the said commission shall divide the District of Columbia into certain districts, to be known, respectively, as height, area, and use districts, and shall adopt regulations specifying the height and area of buildings thereafter to be erected or altered therein and the purposes for which buildings and premises therein may be used: *Provided,* That such regulations may differ in the various districts: *Provided further,* That the permissible height of buildings in any district shall not exceed the maximum height of building now authorized upon any street in any part of that district by the Act of

Congress approved June 1, 1910, and amendments thereto, regulating the height of buildings in the District of Columbia: *And provided further,* That no such districts shall be established, nor shall any regulations therefor be adopted, nor shall the height, area, or use of buildings to be erected therein be prescribed until said commission has afforded persons interested an opportunity to be heard at a public hearing as hereinafter provided: *And provided further,* That in residence districts the usual accessories of a residence located on the same lot including the office of a physician, dentist, or other person, and including a private garage containing space for not more than four automobiles, shall not be prohibited.

"Sec. 4. That after the public hearings herein provided for shall have been concluded, said commission shall definitely determine the number and boundaries of the districts which it is hereby authorized and directed to establish, and shall specify the height and area of the buildings which may thereafter be erected therein, and shall prescribe the purposes for which such buildings thereafter erected may or may not be used. Said districts so established shall not be changed except on order of said commission after public hearing. Said commission may initiate such changes, or they may be initiated upon the petition of the owners affected. Where the proposed change is to add a contiguous area to a use, height, or area district, the owners of at least 50 per centum of the street frontage proposed to be changed must join in the petition: *Provided,* That if the frontage proposed to be changed is not a contiguous area, the owners of at least 50 per centum of a frontage within the area not less than three blocks in length must join in such petition before it may be considered by said commission. No such change shall be made, either by said commission on its own motion or upon such petition, except with the unanimous vote of said commission, if the owners of at least 20 per centum of the frontage proposed to be changed protest against such change.

"Sec. 5. That said commission is authorized and empowered to make such orders and adopt such regulations not inconsistent with law as may be necessary to accomplish the purposes and carry into effect the provisions of this Act. * * *

"Sec. 9. That buildings erected, altered, or raised, or converted in violation of any

of the provisions of this Act or the orders and regulations made under the authority thereof are hereby declared to be common nuisances; and the owner or person in charge of or maintaining any such buildings, upon conviction on information filed in the police court of the District of Columbia by the corporation counsel or any of his assistants in the name of said District, and which court is hereby authorized to hear and determine such cases, shall be adjudged guilty of maintaining a common nuisance, and shall be punished by a fine of not more than $100 per day for each and every day such nuisance shall be permitted to continue, and shall be required by said court to abate such nuisance. The corporation counsel of the District of Columbia may maintain an action in the Supreme Court of the District of Columbia in the name of the District of Columbia to abate and perpetually enjoin such nuisance.

"Sec. 10. That the Commissioners of the District of Columbia shall enforce the provisions of this Act and the orders and regulations adopted by said Zoning Commission under the authority thereof, and nothing herein contained shall be construed to limit the authority of the Commissioners of the District of Columbia to make municipal regulations as heretofore: *Provided,* That such regulations are not inconsistent with the provisions of this law and the orders and regulations made thereunder. In interpreting and applying the provisions of this Act and of the orders and regulations made thereunder they shall be held to be the minimum requirements for the promotion of the public health, safety, comfort, convenience, and general welfare. This Act shall not abrogate or annul any easements, covenants, or other agreements between parties: *Provided, however,* That as to all future building construction or use of premises where this Act or any orders or regulations adopted under the authority thereof impose a greater restriction upon the use of buildings or premises or upon height of building, or requires larger open spaces than are imposed or required by existing law, regulations, or permits, or by such easements, covenants, or agreements, the provisions of this Act and of the orders and regulations made thereunder shall control." 41 Stat. 500–502.

Pursuant to the Act, the Zoning Commission (hereinafter referred to as the Commission) in August 1920 by regulations established height, area and use districts in the District of Columbia, with subdivisions in each. Specifically it divided the District of Columbia in respect of use districts into residential, first commercial, second commercial, and industrial use districts; in respect of height districts, into 40-foot, 50-foot, 85-foot, and 110-foot height districts; and in respect of area districts, into "A", "B", "C", and "D" area districts. Area districts are for the purpose of regulating the area of yards and courts and the percentage of lot which may be occupied by buildings.

The land in question in this case was first zoned in the residential use district, the 40-foot height district, and the "A" area district. The erection of apartment houses was not forbidden in any of the original zoning districts. But in June 1923, after hearings with respect thereto, the Commission by regulation defined a new district called the " 'A' restricted-area district," as follows:

"In the 'A' restricted area district the minimum dimensions of yards and courts and the maximum percentage of the occupancy shall be the same as for 'A' area district, except that hereafter no building shall be erected or altered for use as an apartment house, nor shall any building or premises be used for this purpose."

There were subsequent amendments to this definition but they are not material in this case.

After the establishment of this new district the Commission considered at various hearings what properties should be included therein, and on October 26, 1923, it considered the propriety of transferring thereto certain properties including that later purchased by the appellant. Protest had been made, however, by the appellant's predecessor in interest and certain other property owners with respect to the inclusion of their lands in the " 'A' restricted-area district," and the Commission determined to except them temporarily from an order of transfer so as to postpone court attack on the creation of an " 'A' restricted-area district," and with the expectation that special hearings might later be had with respect to the propriety of their inclusion. Accordingly on October 31, 1923, the properties considered at the hearing of October 26 were ordered changed from their previous zoning to the " 'A' restricted-area district," but not those whose owners had filed protests. On January 17, May 15, and June 19, 1924, hearings were held with respect to the propriety of including in the " 'A' restrict-

ed-area district" these excepted properties. Finally, on June 24, 1924, at an executive hearing of the Commission, an order was made changing the excepted properties to the "'A' restricted-area district." The order read:

"Change from 'A' area to 'A Restricted' area:

"All property exempted from 'A Restricted' area when 'A Restricted' area districts were originally created on October 31, 1923, being lots and parcels located in or near the following squares: [Thereafter followed the numbers of the squares to be changed, including Square 2215 in which is located the property in question in this case, i. e., the tract later purchased by the appellant.] provided, however, that should an owner desire to construct on any of the above lots or parcels a residential development prohibited in the 'A Restricted' area, because he believes the ground unsuited for such purpose, the Zoning Commission will give consideration on its merits to such application when accompanied by description, sketches or plans of buildings proposed."

Nothing further transpired in respect of the zoning of appellant's property—he had purchased it, so he testified, in 1928 or 1929—until September 1931, when the appellant filed a petition, and thereafter a supplemental petition, for change of zoning of his property and a parcel contiguous thereto, owned by one John M. Hammond, from the residential use, 40-foot height, "'A' restricted-area district" to the residential use, 60-foot height, "C" area district. The regulations defining the latter did not forbid the erection of apartment houses. The appellant's petition was accompanied by the consents required by Section 4 of the Act; the owner of the contiguous parcel as owner of "at least 20 per centum of the frontage proposed to be changed * * *" protested against the change. A hearing was held upon the appellant's petition on October 7, 1931, and on October 8 his petition was denied. In May 1932 the appellant filed his bill in equity in the instant case.

The gravamen of the charge in the appellant's bill was that: The Commission was without power to establish the "'A'

restricted-area district" and to include and retain the appellant's property therein; even if the Commission had such power, it exercised it in a manner which invalidated its orders in respect of appellant's property; the Commission's denial of the appellant's petition to rezone the property so as to remove it from the "'A' restricted-area district" was arbitrary because, in view of the circumstances and locality, zoning it within the "'A' restricted-area district" did not in any degree serve to protect the public health, secure the public safety, or protect property in the District of Columbia within the purposes of the Zoning Act. To the contrary the Commission asserted that it had full power to establish the area in question and to include the appellant's property therein; denied that the manner of exercise of its power invalidated its orders; and asserted that the continued inclusion of the appellant's property within the area in question did operate to conserve the public health and public safety, and to protect property in the District of Columbia.

There was a hearing in the trial court upon the merits. Thereat, and by admissions in the pleadings, the following was made to appear: Macomb Street, on which the appellant's property is located, runs east and west. Its eastern terminus is at a dead end about 600 feet east of Connecticut Avenue.[1] Westerly from Connecticut Avenue it extends to Wisconsin Avenue and thence to Massachusetts Avenue. Throughout that length it is zoned, so far as the properties fronting thereon are concerned, in the "'A' restricted-area district" except at the intersections of Connecticut and Wisconsin Avenues, where the less restricted zoning of the latter two streets is applied, namely, first commercial use, 60-foot height, "C" area at three corners and residential use, 60-foot height, "C" area—the zoning sought by the appellant—at the other five corners. In these districts apartment houses are permitted. The development of Connecticut Avenue north of Macomb Street is largely commercial. On the north-east corner of Connecticut Avenue and Macomb Street there is a five-story apartment house, with ground floor stores. Across on the south-east corner is another five-story apartment house, and south of that, fronting on Connecticut Avenue, is a third apartment house.

---

[1] In respect of this the appellant's reply brief asserts: "This condition, however, will exist only so long as the District of Columbia permits it. The highway plan shows a street leading out from Macomb Street at its East end and running to the Northwest, starting with a circle."

South of all of the properties fronting on the south side of Macomb Street east of Connecticut Avenue is a public parkway into which Klingle Road projects, and still farther to the south is the Kennedy-Warren apartment house, facing Connecticut Avenue. The appellant's land fronts, approximately 350 feet, on the south side of Macomb Street east of Connecticut Avenue, extending almost to the dead end of the street. At its easterly end it abuts on an alley dedicated by the appellant, but apparently not yet in actual use. Its depth varies from 141.9 feet at the easterly end to 125 feet at the westerly. For a distance of about 70 feet south from its Macomb Street frontage, it slopes south at a grade of about 3%, and then drops off precipitously the balance of its width into Rock Creek Park. It is unimproved. Immediately to the west of the appellant's tract and separating it from the two apartment houses located on the south-east corner of Connecticut Avenue and Macomb Street is a tract fronting 90 feet on Macomb Street. This is the Hammond property, the tract the appellant sought to have rezoned with his own. On it is a single-family dwelling. Macomb Street is 60 feet wide, but there is a 15-foot building restriction on each side so that the width from curb to curb is 30 feet. Across Macomb Street to the north, substantially opposite the Hammond property and the appellant's tract, are four semi-detached and three wholly detached single-family dwellings.[2] To the east of these is an estate of at least 5½ acres with a detached dwelling—the Schoellkopf estate—and to the west of them, *i. e.,* toward Connecticut Avenue, is the five-story apartment house above mentioned as located at the north-east intersection of Connecticut Avenue and Macomb Street. The facts above set forth are substantially without dispute.

To sustain his position that the Commission's retention of his property in the "'A' restricted-area district" bore no relation to the public health, safety, or the protection of property, the appellant relied upon the physical facts above set forth and upon evidence tending to prove the following: As zoned in the "'A' restricted-area district" the appellant's land is worth 15 cents a square foot; if rezoned as desired it would be worth $2.50. It is to some extent filled land. In its present condition it is ill suited for the construction of residences because of the comparatively shallow depth between the building restriction line and the point where the tract commences to drop precipitously; a substantial amount of work in grading and construction of retaining walls involving a prohibitive expenditure would be necessary before the land could be utilized for single dwellings—some of the dwellings on Macomb Street west of Connecticut Avenue have such retaining walls; there would not be the same engineering problem in the erection of an apartment house. The tract in question could with proper landscaping be developed for the erection of one "palatial residence" with "a beautiful sunken garden effect in the rear," but that "would be very expensive," and "the houses in the neighborhood are not very high grade, just ordinary homes." To the contrary the appellees relied upon evidence tending to prove that: The appellant had purchased this property in 1928 or 1929, after its inclusion in the "'A' restricted-area district," at about 65 or 75 cents a square foot. Appellant had not had engineering studies made of the availability of the property for different uses. It would be practicable to construct residences on lots of 50 to 70 feet frontage—the "land lends itself beautifully to development of rock gardens and landscape architecture in [the] rear"—or residences on a central entrance plan built to a depth of 28 feet with the rear yards landscaped into rock gardens; retaining walls would not be necessary—land on Macomb Street west of Connecticut Avenue and similar in topography to that of the appellant had been developed with single residences erected on the front part of the property, and some of these did not have retaining walls. "Apartment houses are noisy. They can and sometimes do harbor immorality. 'The loud speaker' has increased their objectionableness. The tenants park their cars so close that it is impossible for the home owner to approach his * * * home. Automobiles come and go all hours of the night." An apartment house on the appellant's property "will cut off light and air to such an extent as to make it impossible to continue to occupy * * * residences." The apartment houses already in the vicinity are more than capable of caring

---

[2] The semi-detached dwellings were apparently built prior to the establishment of the "'A' restricted-area district," since that zoning in terms proscribes buildings of that sort.

for apartment house dwellers, all of them having vacancies. The appellant's tract is not large enough for a suitable apartment house.

The trial court made the following findings of fact:

"1. That the Zoning Commission in establishing the 'A Restricted' area and in classifying the plaintiff's property therein, proceeded in accordance with the provisions of the Zoning Act.

"2. That the Court finds as a fact that the change of the zoning of the plaintiff's property as prayed would seriously affect the public health, public safety, the public welfare and the protection of property in the vicinity of plaintiff's property.

"3. That the plaintiff has failed to prove that the change in the zoning permitting the erection of an apartment house, as prayed by the plaintiff would not affect the public health, the public safety, the public welfare and protection of property in the vicinity of the plaintiff's property.

"4. That the action of the Zoning Commission in refusing to rezone the plaintiff's property, as requested in their petition before the said zoning commission, was neither arbitrary nor unreasonable."
and conclusions of law:

"1. That the defendants, the Zoning Commission, had authority under the said Zoning Act to promulgate the regulations creating the 'A Restricted' area and placing the plaintiff's property therein.

"2. That the Zoning Commission, in refusing to rezone the plaintiff's property as requested in his petition before the said commission, did not act in an arbitrary or unreasonable manner.

"3. That the Zoning Act by its express terms, and from its very nature, should be given a liberal construction."
Upon such findings of fact and conclusions of law the court decreed that the bill of complaint should be dismissed.

The points raised by the assignment of errors and urged in the briefs on this appeal involve the correctness of the rulings of the trial court upon the following.[3] I. Had the Commission power to create the "'A' restricted-area district"? II. If so, had the Commission power to create it after the sixth months' period specified in Section 2 of the Act? III. If the answers to questions I and II are both in the affirmative, was the Commission's power validly exercised? IV. The admissibility of evidence. V. Did the trial court properly find that the Commission was not arbitrary in its denial, in 1931, of the appellant's petition for rezoning? VI. Were the findings of fact requested by the appellant properly stricken from the record?

I. Had the Commission power to create the "'A' restricted-area district." Under this topic the appellant takes the position that the power of the Commission as defined in Section 2 of the Act. is limited to the creation of three types of districts only, to wit, height districts, area districts and use districts, and that the creation of the "'A' restricted-area district" is beyond the power of the Commission because it is, in effect, a fourth type of district whose characteristics are a combination of area and use, that is to say, residential use excluding apartment houses, and "A" area requirements in respect of yard and court dimensions and percentage of lot occupancy. Putting it otherwise, the appellant contends that the Commission may validly create a residential use district, but that it may not limit residential use to residences other than apartment houses, and may not, in the same regulation which creates a district, limit residential use to residences other than apartment houses and also stipulate area district requirements. The appellant rests these contentions upon that language of Section 2 which provides that "the said commission shall divide the District of Columbia into certain districts, to be known, respectively, as height, area, and use dis-

---

[3] In addition to the questions raised by the appellant, the appellees present in their brief a question as to the propriety of the remedy sought below. In the appellees' answer they asserted as a ground for dismissal of the bill of complaint that it 'failed to allege that the plaintiff had filed an application for a building permit with the defendant Inspector of Buildings, and therefore the suit was prematurely brought and presented no justiciable issue.

This contention is disposed of by our ruling in Melvin C. Hazen et al. v. Evelyn S. Hawley, No. 6553, 66 App.D.C. 266, 86 F. (2d) 217, decided this day, that the remedy of injunction against the Zoning Commission is proper.

There was an additional question presented by the appellant, that of his right to affirmative relief prayed for, but, as will appear, it is not necessary to discuss it.

tricts * * *" and upon the language of a proviso "That in residence districts the usual accessories of a residence located on the same lot including the office of a physician, dentist, or other person, and including a private garage containing space for not more than four automobiles, shall not be prohibited." Appellant's point of view apparently is that the language first quoted is so specific as clearly to limit the Commission to the creation of separate height, area and use districts only, and that the language next quoted by necessary implication excludes the possibility of the creation of any residential use except an all-inclusive one permitting all kinds of residences including apartment houses. Asserting that the statute is in derogation of the common law, and also, because of the provisions of Section 9 for enforcement, penal in nature, appellant insists that a rule of strict construction must be applied.

We are unable to subscribe to the view that the Act so narrowly restricts the powers of the Commission. In addition to the proviso quoted, Section 2 says that the Commission "shall adopt regulations specifying the height and area of buildings thereafter to be erected or altered therein and the purposes for which buildings and premises therein may be used * * *." We think the word "therein" refers to all three districts, height, area and use, and that the phrase "purposes for which buildings and premises therein may be used" is so broad as to empower the Commission to subclassify residence uses, especially when read in connection with the immediately following additional proviso of Section 2 that "such regulations may differ in the various districts * * *." Zoning against apartment houses is recognized by the highest authority as bearing a proper relationship to the ultimate purpose of zoning statutes in respect of the protection of the public health, safety, morals and general welfare. Euclid v. Ambler Co., 272 U. S. 365, 394, 395, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016. The appellant's objection to the creation by one regulation of a district which combines use and area limitations is formalistic. If the Commission has power, as we rule that it has, to create a use district with an apartment house restriction, it could do this by one separate regulation, and then, by another, create an area district to cover the same tracts. With respect to the rule of strict construction relied upon by the appellant,

that rule is itself subordinate to the rule of sensible construction and is not to be applied in such manner as to defeat the obvious intention of the legislature. Wade v. United States, 33 App.D.C. 29, 20 L.R. A.(N.S.) 347, 17 Ann.Cas. 707.

■ II. Had the Commission power to create the " 'A' restricted-area district" after the six months' period specified in Section 2 of the Act. In support of a negative answer, the appellant relies upon the language of Section 2 that "within six months after the passage of this Act and after public notice and hearing as hereinafter provided, the said commission shall divide the District of Columbia into certain districts * * *," and upon the complementary language of Section 4 that "after the public hearings herein provided for shall have been concluded, said commission shall definitely determine the number and boundaries of the districts which it is hereby authorized and directed to establish, and shall specify the height and area of the buildings which may thereafter be erected therein, and shall prescribe the purposes for which such buildings thereafter erected may or may not be used," and upon the further provision of Section 4 that "Said districts so established shall not be changed except on order of said commission after public hearing." Appellant concedes in his bill of complaint that the provision last quoted permits a change in the districts after the sixth months' period, in the sense of transferring properties from one of the districts established within the six months' period to another district, but asserts that this is the only change permitted. The word "change" need not be so narrowly construed. Section 5 of the Act authorizes the Commission "to make such orders and adopt such regulations not inconsistent with law as may be necessary to accomplish the purposes and carry into effect the provisions of this Act * * *." In view of the objects of the Act as a whole, we think the questioned language authorizes change of districts, in the sense of establishing new restrictions after the six months' period. Indeed, any other view of the statute would so limit the power of the Commission as to prevent the accomplishment of one of the essential objects of a zoning act, to wit, proper and orderly development of a city in the course of its growth, and proper planning therefor. The six months' provision in Section 2 is not a temporal limitation upon the powers of the Commission,

but a legislative direction for prompt bringing of the Act into operation.

■ III. Was the Commission's power validly exercised. Under this topic appellant presents a miscellany of matters:

(a) In respect of the 1923 hearings, concluded in June 1923, when the Commission created the "'A' restricted-area district," and in respect also of the 1924 hearings on the propriety of the inclusion of the appellant's land, the Commission, it seems, considered matters—the exact nature of which is not made to appear in the record—not introduced at the hearings. Also, the Commission permitted to appear and testify at these hearings, and at the October 1931 hearing, when the appellant petitioned for removal of his property from the "'A' restricted-area district," certain persons other than those mentioned in Section 4 (as petitioners for, or protestants against, change of zoning) to wit, certain civic associations, persons who had no interest in the properties affected, persons not property owners at all—indeed, apparently anyone who desired to appear. At the 1924 hearings, concerning transfer of the plaintiff's property to the "'A' restricted-area district," the appellant's property was considered not alone but with a large number of other tracts. Appellant asserts that such conduct of the hearings invalidated them. We think this objection unfounded. The statute does not require a separate hearing for each tract of property affected. The other objections proceed apparently from the premises that the hearings contemplated by the Zoning Act are judicial in nature and that under Section 4 of the Act only those can be heard who are owners or residents within the three-block area specified. But this only defines the class who must join in a petition for rezoning, and does not limit the extent of the public hearing. And it is well settled that a zoning commission acts in a legislative capacity. Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074. It is not, therefore, any more than a legislative committee would be, subject to the rules of procedure which govern the conduct of judicial hearings. Only if its action is palpably arbitrary can a court set it aside. This topic we discuss below.

■ (b) The validity of the denial by the Commission on October 8, 1931, of the appellant's petition for rezoning his tract is attacked because of the applicability thereto of that part of Section 4 of the Zoning Act which provides that no change in districts established shall be made "except with the unanimous vote of said commission, if the owners of at least 20 per centum of the frontage proposed to be changed protest against such change." Hammond, owner of the tract adjoining the plaintiff's property on the west, had protested, and his tract comprised 20% of the frontage. The appellant asserts that the clause in question invalidly delegates legislative authority to protesting property owners. But appellant cannot attack the provision as unconstitutional and as therefore invalidating the hearing in question except upon a showing that he was injured thereby. He has not shown that in the absence of the 20% unanimous vote clause, the zoning he sought would have been granted him. Nor has he shown that he was unable to ascertain the vote on his petition. "Not a law alone, but a law and its incidence are necessary to a justiciable right or injury * * *." Clark v. Kansas City, 176 U.S. 114, 118, 20 S.Ct. 284, 44 L.Ed. 392.

■ (c) Appellant asserts that the order of June 24, 1924, changing his property to the "'A' restricted-area district" is void for uncertainty in respect of its description of his property. The text of the order appears in the statement of facts above. It is not uncertain, for it refers to the order of October 31, 1923, which changed from the "'A' area district" to the "'A' restricted-area district" all property within specified boundaries "except that property for which protests against inclusion in the 'A' restricted-area district are on file with the Zoning Commission." A protest having been filed on behalf of the appellant's property, it was thus excluded from the order of October 31, 1923, and included in the order of June 24, 1924. The order is, moreover, sufficiently definite on its face because it describes "lots and parcels located in or near the following squares," and then square 2215, in which the appellant's property is situated, is listed.

■ (d) Appellant contends that the order of June 24, 1924, is invalidated by the terms of its proviso to the effect that should any owner desire to construct upon the parcels transferred to the "'A' restricted-area district" a residential development prohibited therein, the "Commission will give consideration on its merits to such application when accompanied by description, sketches or plans of buildings proposed."

It is argued that as thus phrased the proviso contemplates consideration without a public hearing. If the proviso is ambiguous we must give it a construction which would make it conform with 'the purpose of the statute, which is apparently to accord public hearings on all changes in zoning. But again the appellant has not shown that he has been injured by the proviso through any denial of a public hearing.

IV. Did the trial court correctly rule upon the admissibility of evidence.

■ (a) The trial court excluded evidence of declarations by members of the Commission tending to show that the declared policy of the Commission was to impose upon one seeking a change of zoning the burden of proof. Appellant asserts this as error. Admission and consideration of this evidence by the court could not have operated to invalidate the Commission's hearings and action: first, for the reason set forth above that its functions are legislative; second, because, even in a judicial proceeding it is in accordance with proper rule to impose the burden of proof upon him asserting a right.

■ . (b) The trial court excluded the following items: Evidence of the reading at a public hearing on June 14, 1923, by the Acting Chairman of the Commission of the text of the proposed change in the regulations whereby the " 'A' restricted-area district" would be established; evidence of a colloquy, at the same hearing, in which the Acting Chairman of the Commission, in reply to the question "If such an area is established, is it your understanding that the Zoning Commission will now have power to go over the whole of that area and establish the restricted area?", answered, "I think we would be qualified to do that but personally I would rather sit here and wait for owners to come in and ask that the restricted than be lifted. That is my personal feeling"; evidence that at the public hearing of January 17, 1924, the Chairman of the Commission indicated that it was not then necessary to go into detail as to the merits of the " 'A' restricted-area district" for the reason that the Commission already "has a world of testimony about that subject." The trial court did not err in excluding these items of evidence. The first two were clearly immaterial. The third would have been relevant only if the Commission was bound by the rules applicable to court hearings.

■ (c) The trial court excluded from evidence a record of the Commission showing that at the public hearing of September 27, 1923, the Chairman of the Commission stated that the Commission considered individual cases [apparently individual petitions for change of zoning] when they came up, without a public hearing. This was offered in evidence in connection with the appellant's attack upon the validity of the proviso in the order of transfer of June 24, 1924. The appellant relied upon it as an interpretation of the proviso by the Chairman of the Commission. We find no error in the exclusion of this item. The statement was made before the proviso came into being, could not in any event affect its validity, and had no relevancy, whether or not the appellant had a public hearing.

■ (d) The trial court admitted in evidence answers to questions, put the plaintiff on cross-examination, concerning the time when he purchased his property and the price paid therefor. The purpose of the questions was apparently to bring out that he had purchased the property subsequent to its inclusion in the " 'A' restricted-area district" and to make a showing concerning its market value. We think the evidence correctly admitted as bearing upon the reasonableness of the appellant's case.

■ V. Did the trial court properly find that the Commission was not arbitrary in its denial, in 1931, of the appellant's petition for rezoning? Under the rule settled in this jurisdiction, while we are not absolutely bound by a chancellor's findings of fact, we do not disturb them on appeal unless upon an examination of the evidence they are clearly wrong. · Dear v. Guy, 64 App.D.C. 314, 78 F.(2d) 198; Pollock v. Jameson, 63 App.D.C. 152, 70 F.(2d) 756. Rhoderick v. Swartzell, 62 App.D.C. 180, 65 F.(2d) 813, certiorari denied 290 U.S. 677, 54 S.Ct. 100, 78 L.Ed. 584; Matson v. Rusch, 61 App.D.C. 184, 59 F.(2d) 360. See, also, United States v. United Shoe Mach. Co., 247 U.S. 32, 41, 38 S.Ct. 473, 62 L.Ed. 968. As appears from the statement of facts above, there was a conflict of evidence in the trial court on the question whether the continued inclusion of the plaintiff's property in the " 'A' restricted-area district" bore any reasonable relation to the protection of the public health, the securing of the public safety and the protection of property in the District of Co-

lumbia. There was substantial evidence in support of the appellant's prayer for change of zoning, and substantial evidence in opposition. In view of this, and of the rule above stated, we are unable to say that the trial court must have found the action of the Commission arbitrary. Only if there is arbitrary action on its part can the courts intervene. Zahn v. Board of Public Works, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074; Euclid v. Ambler Co., 272 U.S. 365, 47 S. Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Nectow v. Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842.

VI. Were the findings of fact requested by the appellant properly refused and stricken from the record. Extensive proposed findings of fact were presented to the trial court by the appellant. The trial court refused them and struck them, to which the appellant excepted. The proposed findings contained, in paragraphs 1, 2, 3, 4, 6 and 9, a statement of a part of the undisputed facts in the case; paragraph 5 in the large embodied further undisputed facts, but it contained also a statement which, upon all the evidence, the court might properly have felt not wholly accurate; paragraph 7 the court may have concluded not accurate; paragraph 8 embodied in the large a further statement of undisputed facts, but it contained also a statement of immaterial matter; the same is true of paragraph 10; paragraph 11 embodied explanatory matter not a necessary part of the findings; paragraph 12 read "It is economically impracticable to use the property described in Finding No. 1 [appellant's property] for detached residence purposes or otherwise than for apartment house purposes." As to the last the evidence was in dispute, and it seems apparent that the trial court believed that to the contrary. The trial court was not obliged to adopt those paragraphs which, though they contained undisputed facts, also contained the other matter above described; and as to those paragraphs which did contain undisputed facts only, the trial court was not obliged to adopt them alone, for to do so would have been to make an incomplete statement. Why the trial court struck the proposed findings does not appear. A sufficient record had been made by refusal to adopt them and notation of the appellant's exception to this refusal. If by striking them it was intended to eliminate them from any consideration on appeal, we think they should not have been stricken. If by

striking them it was intended only to reiterate for the record their refusal, this did not harm the appellant. In any event, the proposed findings were actually printed in the record and the propriety of refusing and of striking them argued in the briefs, and we have taken account of their contents in considering the error assigned upon the trial court's refusal and striking of them. We have, moreover, carefully reviewed the record and in this opinion stated the facts to the extent that they are undisputed and stated the evidence upon which the trial court reached its conclusion in respect of the disputed facts.

We conclude that the evidence in the record supports the findings of fact made by the trial court, and that the essential conclusions of law were proper. Since we conclude that the trial court properly held the establishment of the " 'A' restricted-area district" and the inclusion and retention of the appellant's property therein valid, it is unnecessary to discuss the affirmative relief sought.

Accordingly, the decree of the trial court dismissing the bill of complaint is hereby

Affirmed.