In the Matter of the Judicial Settlement of the Account of SARAH
E. SEAMAN, as Executrix of the Will of JAMES M. SEAMAN,
Deceased, Appellant.

FIRST NATIONAL BANK OF FREEPORT, N. Y., Respondent.

Second Department, June 8, 1923.

**Bills and notes — claim in Surrogate's Court against estate of maker —
maker, executor of another estate, withdrew estate funds, deposited
them in personal account in respondent bank and paid note in question
from said funds — bank was compelled to repay estate of which testator
was executor — bank and testator were not joint tort feasors under
Code of Civil Procedure, § 2574, subd. 7, and § 2664a, added by Laws of
1916, chap. 588 — bank is entitled to equitable subrogation against
maker's estate — surrogate had equitable jurisdiction.**

The respondent bank held a note against the testator. The testator, who was
executor of an estate, withdrew funds of the estate from the bank in which they
were deposited and deposited the same in his personal account in respondent
bank and paid the note in question therefrom. Subsequently, the respondent
bank was compelled to repay the money to the estate from which the testator
had taken it and it presents its claim against the testator's estate based on
said note.

*Held*, that the respondent bank was not a joint tort feasor with the testator
under the Code of Civil Procedure, section 2574, subdivision 7, and section
2664a, added by chapter 588 of the Laws of 1916, which made it illegal for an
executor to deposit funds of an estate in his individual account, since it appears
that said provisions of the Code did not go into effect until the very day that
the note was paid by the testator to the respondent bank.

The respondent bank has the right to equitable subrogation and to compel the
payment of the note out of funds of the testator's estate, though as between
the bank and the testator both were liable for the funds withdrawn from the
estate of which the testator was executor.

The note in question was never paid by the testator within the meaning of section
200 of the Negotiable Instruments Law, since the payment of a note with
money which belongs to another and which has been appropriated for that
purpose is not, in equity and justice, a payment in due course.

The Surrogate's Court had equitable jurisdiction to dispose of the claim of the
respondent bank.

APPEAL by Sarah E. Seaman, as executrix, etc., from a decree
of the Surrogate's Court of the county of Nassau, entered in the
office of said Surrogate's Court on the 4th day of December, 1922,
allowing a claim of the respondent against the estate of James M.
Seaman, deceased.

*Charles Driggs Lewis,* for the appellant

*Edward B. Thompson,* for the respondent.

MANNING, J.:

This appeal is by Sarah E. Seaman, as executrix of the last will and testament of James M. Seaman, deceased, from a decree of the surrogate of Nassau county which allowed the claim in favor of the First National Bank of Freeport for the sum of $3,228.98 and interest thereon from December 11, 1920, against Seaman's estate. The claim was resisted by the executrix upon the ground that no legal liability rested upon the estate to pay the claim but that the bank itself was the real debtor; that the note upon which its claim was founded was void, and that the surrogate should have dismissed the claim. The present controversy between the parties hereto arises out of, and is an aftermath of, a prior litigation between the estate of one Mary Powell, deceased, and the bank, the result of that litigation being that the bank was compelled to pay to the Powell estate a certain sum of money which it paid to Seaman, who in addition to being a depositor in the bank in question, was also an executor of the Powell estate.

The facts leading up to the present appeal are not in dispute and the record contains a stipulation to this effect. I quote from so much of the stipulation as is pertinent to the issue before us.

It is shown that James M. Seaman died at Wantagh, N. Y., on the 17th day of February, 1920, and that previous to his death he had been appointed an executor of the estate of one Mary Powell, deceased, and that at the time of his death he was acting as such executor; that on the 1st day of September, 1916, Seaman, as such executor, had an executor's account in the Freeport Bank of Freeport, N. Y., and that at the same time he had a personal account in the First National Bank of Freeport, and that on that first day of September he was personally indebted to the First National Bank in the sum of $2,500 as evidenced by his promissory note dated the 3d day of July, 1916, which read as follows:

" $2500.00               FREEPORT, N. Y., *July* 3 1916

" Two months —— after date I promise to pay to the order of The First National Bank, Freeport, N. Y. Twenty Five hundred 00 —— Dollars at The First National Bank, Freeport, N. Y. with Interest. " Value Received.

" No. 17042 Due Sept. 3 /16         JAMES M. SEAMAN."

That on the 1st of September, 1916, James M. Seaman deposited $2,500 in the First National Bank of Freeport to his individual account and that the said sum of $2,500 so deposited was drawn from the account of Seaman, as executor of the estate of Mary Powell, deceased; that on the 1st of September, 1916, Seaman drew from his personal account in the First National Bank of

MATTER OF SEAMAN.**683**

App. Div. 681]          Second Department, June, 1923.

Freeport, and paid the same to the First National Bank of Freeport on account of his promissory note, the sum of $2,540.30, and that upon the receipt of said sum of money the bank delivered to Seaman his note, and that since that time his estate has been in possession of the note; that thereafter, and in August, 1920, an action was brought by the administrators with the will annexed of the Powell estate against the Freeport bank and the First National Bank to recover this sum of $2,500, with the result that the court dismissed the complaint as against the Freeport bank but allowed the case to go to the jury as against the First National Bank. The trial resulted in a verdict against the First National Bank in the sum of $2,500. That the bank thereafter appealed from this judgment to our Appellate Division, and on the 17th of March, 1922, we affirmed the judgment with a modification reducing the amount of the judgment to $2,030.97 (*Powell* v. *Freeport Bank*, 200 App. Div. 432), and that pursuant to that judgment, and on the 1st day of April, 1922, the First National Bank of Freeport paid the amount of the judgment to the estate of Mary Powell. It is the claim founded upon this judgment which was allowed by the surrogate in the decree from which the present appeal is taken.

The appellant claims that the bank cannot recover the amount of its claim for the reason that on the conceded facts it appears that on the 1st day of September, 1916, Seaman was the bank's debtor to the extent of $2,500, as evidenced by his note which the bank held; that on the day in question he paid the amount of this note by check and his note was returned to him marked paid, that his account was charged therewith and his vouchers returned to him, and that this action on the bank's part ended the note transaction forever between the bank and himself.

The appellant also makes the claim that under chapter 588 of the Laws of 1916 (adding to Code Civ. Proc. § 2574, subd. 7, and § 2664-a; now Surr. Ct. Act, § 104, subd. 7; Id. § 231), Seaman and the bank were joint tort feasors, and hence no contribution or indemnity can be had in the bank's favor and against Seaman's estate. To support this argument, it is pointed out that at the time that the note transaction took place this statute which I have mentioned was in force, and under such statute it was both improper and illegal, and in fact a misdemeanor, for an executor to deposit funds of an estate in his individual account. The appellant says that the bank had notice of this situation by the form of Seaman's deposit and his withdrawal of the funds to pay a debt of his own to the bank itself. It is true that in the case of Powell against the bank, decided by us (*supra*), the opinion of Presiding Justice BLACKMAR says that the bank had notice

that Seaman was using the estate's funds to pay his own debt, but the question here is whether the bank has the right to equitable subrogation and thus compel the payment of Seaman's note out of the funds of his estate. The appellant claims that the bank never became a *bona fide* owner of the note for value, and having, as appellant says, aided Seaman in the commission of a crime, that the doctrine of subrogation or contribution cannot be invoked. I confess that I cannot follow the reasoning of the astute and learned counsel for the appellant in his process of reasoning, nor do I agree with his law. He cites the case of *Tracy* v. *Talmage* (14 N. Y. 162) wherein he claims that " it is laid down that no contribution applies where one aids and abets another or if one party commits a crime and the other makes it possible to commit it, by circumstances wholly within the jurisdiction of the second party." As I read the case, the language is not aptly quoted, nor is it an authority for his claim. In *Tracy* v. *Talmage* it was held that where the vendors of stock to a banking corporation by the contract of sale agreed to, and did receive therefor notes, payable on time, which the corporation was not authorized to make, and from issuing which it was prohibited under a penalty by statute, that notwithstanding the contract was illegal and void, the vendor could recover the value of the stocks sold and delivered on an implied undertaking, and that, although the vendor was a party to the illegal contract, he was not *in pari delicto* within the rule which forbids the court to grant one party to an illegal contract or transaction relief against the other. That case also holds that where the parties to a transaction not *malum in se*, but prohibited by a statute, are not equally guilty, courts may afford relief to the less guilty party. So, as we have the situation here, it appears that the statute prohibited an executor from depositing trust funds in his individual account; that this statute went into effect the very day that Seaman's note was paid; that before that day there was no such prohibition. Under these circumstances can it be said in all justice and fairness that the bank here was equally guilty of the crime and *in pari delicto* with Seaman? I think not. The bank was not guilty of the same act of negligence at all so as to constitute it a joint tort feasor. Seaman's unlawful act was in the taking of the estate's funds and placing them in the bank to his own credit. He then used the funds to pay his individual debt, which was another unlawful act; and it was only at a later step in the transaction, to wit, when the bank accepted a portion of these funds in payment of his individual note, that the bank became liable upon the theory of constructive notice. Seaman was the only one who was clearly guilty of the first affirmative act, and hence the loss, if any, should

be borne by him or by those representing his estate. No doubt, as regards third parties, both the bank and Seaman were liable, and such was the theory on which our decision of the case of Powell against the bank was rendered. There is no claim or proof in this case that the bank had any actual notice of the character of the funds used by Seaman. Its liability was determined solely upon the doctrine of imputed or constructive notice. In the present controversy we have an entirely different situation from the one presented in the *Powell* case. This is an action by the bank seeking payment of a note for which full value was given, from the maker, Seaman, the original debtor, for the reason that the note has never been paid by him. The fact that the bank was obliged to pay the Powell estate the amount of the estate's funds represented by the note and used by Seaman, does not, of course, pay the note so far as Seaman is concerned at all. The original indebtedness still remains. The Negotiable Instruments Law (§ 200) reads as follows: " Instrument; how discharged. A negotiable instrument is discharged: 1. By payment in due course by or on behalf of the principal debtor." Payment of the note with money which belongs to another and which has been appropriated for that purpose is not in equity and justice a payment in due course, within the meaning of this section. (See *Pittsburgh-Westmoreland Coal Co.* v. *Kerr,* 220 N. Y. 137.) The facts in that case were somewhat identical with the case under investigation. In the opinion Judge CHASE says (p. 141): " When the plaintiff's money to an amount equal to the sum due on the note in question was transferred to the bank and John K. Kerr thereby obtained possession of the note and destroyed it, the note was in form paid, and canceled, but it was not in equity and justice a ' payment in due course by or on behalf of the principal debtor ' within the meaning of section 200 of the Negotiable Instruments Law."

If the appellant's argument is to prevail here, then we have " payment " by the mere stamping of the word " paid " on Seaman's note and the handing of it back to Seaman by the bank. Surely, since his own money did not pay for it, there could be no actual payment of the note by Seaman.

The surrogate in a brief opinion says: " It seems to me that the consideration of James M. Seaman for the remainder of his note failed when the court required the return of the money to its rightful owner, and the bank may rightfully look to the estate of James M. Seaman for a proper and legal payment of his indebtedness." There is no contention anywhere that a payment such as mentioned by the surrogate has ever been received by the First National Bank of Freeport.

Other cases might be cited upon this proposition, but I do not deem it necessary to refer to them. As contended for in the brief of the respondent here, there never was a full and complete performance of the duty which Seaman owed to the bank on the promise that Seaman made to the bank, and that was to pay the note in question with his own money. The statute contemplates a payment with his own funds, and not with those of another.

There is another suggestion made in the appellant's reply brief, to the end that the Surrogate's Court has no equitable jurisdiction to dispose of a controversy of this character. With this contention I also disagree, for under the present Surrogate's Court Act that official has power to try all questions, legal and equitable. (See Surr. Ct. Act, § 40.)

I suggest an affirmance of the decree of the Surrogate's Court of Nassau county, with costs payable out of the estate.

KELLY, P. J., RICH, JAYCOX and KAPPER, JJ., concur.

Decree of the Surrogate's Court of Nassau county affirmed, with costs payable out of the estate.