**DAVIS et al. v. CASEY et al.**
**No. 7015.**

United States Court of Appeals for the
District of Columbia.

Decided Feb. 6, 1939.

Paul E. Lesh and Dale D. Drain, both of Washington, D. C., for appellants.

George D. Horning, Jr., Louis M. Denit, Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, John E. Larson, William C. Sullivan, Milton W. King, and Bernard I. Nordlinger, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

PER CURIAM.

This is an appeal by the plaintiffs and intervenors below from a final decree of the District Court dismissing on the merits a bill in equity for the cancellation of a release, the reinstatement of a deed of trust, and foreclosure.

On the 7th day of November, 1925, Rose G. Casey delivered to Swartzell, Rheem and Hensey Company of Washington, D. C.,[1] her 309 promissory notes in the total sum of $190,000. To secure to the holder or holders payment at maturity, Mrs. Casey simultaneously executed to Luther A. Swartzell and Edmund D. Rheem, trustees, a deed of trust on an apartment building belonging to her in the City of Washington. The notes ranged in amount from $100 to $1,000. Some were payable in 18

---

[1] The notes were made payable to John H. Holmead and were indorsed by him in blank and delivered to the Swartzell Company on account of its loan of $190,000 to the maker.

months, others in 2 to 5 years. All bore interest at the rate of 6½% payable semi-annually, and were payable at the office of Swartzell, Rheem and Hensey Company, Washington, D. C. Notes to the amount of $25,000 were paid off prior to 1930, so that at the time of the events out of which this controversy arose, there were outstanding notes in the amount of $165,000. Of these appellants held $27,400. At the same time Swartzell Co. held $28,650 for collection, including $5,150 belonging to appellants and $600 belonging to itself. The balance were in the hands of Swartzell Co.'s customers. The deed of trust contained the usual provisions for release and reconveyance of the property upon full payment of the debt and authorized the trustees to sell the property upon default and pay the debt. The deed contained nothing with respect to place of payment or anticipation, but each note was "Payable at the office of Swartzell, Rheem & Hensey Co., Washington, D. C.", and reserved the privilege "of paying this note at any time before maturity upon payment of interest to date of payment and two months' interest in advance".

On the 21st day of May, 1929, after several mesne conveyances, Eugene A. Smith, Inc. (one of appellees), purchased the property subject to the trust. In the summer of 1930, some 6 months before the Casey notes matured—and in order to pay them off—Smith Co. made written application through Boss & Phelps, agents, to the John Hancock Mutual Life Insurance Company (principal appellee), for a first trust loan of $125,000 on the property. Boss & Phelps knew that the loan was to refinance the property. They forwarded the application to the Insurance Company July 3, 1930, and July 8 received notice that the loan would be made.

The decision turns upon the occurrences subsequent to this loan application.

Swartzell, Rheem and Hensey Company was adjudicated a bankrupt January 26, 1931. Prior thereto, and for more than 50 years, it had been engaged in the business of lending money on real estate and selling mortgage notes. In 1925, at the time of the Casey loan, its business had grown, and it had a large clientele to whom it sold notes required in its building and loan operations. Its general reputation for strength and integrity was high. Invariably it collected from borrowers the interest on notes sold by it and remitted to its customers. Fre-

quently it collected also the principal, and in some instances remitted to noteholders. In other instances with their approval it reinvested for them in like notes.

In the matter now under consideration, Eugene A. Smith, Inc., had, at the time in question, acquired title to the mortgaged property subject to the Casey debt, and as the day for payment approached, Smith Co. and Swartzell Co. took the steps we have mentioned to secure another loan to replace it. Subsequently, and after Insurance Company had approved the loan, Swartzell Co., working in association with Smith Co., ordered an examination of the title by District, Lawyers, and Washington Title Insurance Companies, and on July 12 received the report and abstract which it delivered to Boss & Phelps, who in turn mailed it to Insurance Company. The title companies' report covered through July 7 and showed title to the property in Smith Co. subject to the Casey deed of trust. On July 22, Insurance Company sent to Boss & Phelps its check for $125,000, to be used in closing the loan, subject to the following conditions: that Insurance Company receive the note of Smith Co. for $125,000 and a duly executed and recorded deed of trust securing the note, policies of insurance, and a certificate of title from the title company showing the property "subject only to the lien of our mortgage". Boss & Phelps the next day sent the Title Company the form of note and deed of trust to be executed by Smith Co. On August 1 Swartzell Co. wrote the Title Company that it would accept for the $165,000 of outstanding Casey notes the net proceeds of the Insurance Company loan, a $40,000 second trust note, and an unsecured note of Smith Co. to cover interest from May 7 (the date of last interest payment) to the date of settlement. Then, on August 5 Smith Co. executed a trust deed securing its note to Insurance Company, and on the same day conveyed the property to Herman Cutler, who executed a second trust to secure his note for $40,000 payable to Handy, an employee of Swartzell Co., after which Cutler reconveyed the property to Smith Co. On August 6 Boss & Phelps gave to the Title Company a check for $122,756.65, representing the proceeds of the Insurance Company loan after deduction of a commission. On August 7 the Title Company recorded the Smith deed of trust to secure Insurance Company and simultaneously recorded the Smith deed to Cutler and Cutler's deed to secure the

$40,000 second trust note. On August 8 the Title Company, acting for Insurance Company, paid over to Swartzell Co. $118,451.-80, representing the net proceeds of Insurance Company's loan, and also the Cutler note for $40,000, and Swartzell Co. informed the title company that it would itself procure the unsecured note of Smith Co. Swartzell Co. at the same time delivered to the Title Company a release deed of the Casey trust executed August 8, 1930, by Swartzell and Rheem, trustees. On August 11 the release was recorded, and on September 27 Smith Co. gave Swartzell Co. its unsecured note for $8,295.70, the amount Swartzell Co. had notified the title company it would accept to cover interest to date of settlement and the expenses and commissions in securing the new loan. From time to time over the next few months Swartzell Co. paid off holders of Casey notes to the amount of $72,150, but left unpaid notes aggregating $92,850, among which were the notes held by appellants. Swartzell Co. also paid all Casey noteholders interest to November 7 without notice to them that their security had been released. Swartzell Co. then was put into bankruptcy, and that precipitated the trouble.

Upon consideration of the facts we have outlined above the trial court, over appellants' objection and exception, found as a fact that: "In taking the foregoing actions, Hancock Company and Boss & Phelps were taking every reasonable precaution that could have been expected of a prudent person or corporation before advancing the money to Eugene A. Smith Co., Inc.; they had no knowledge of any irregularity in the release executed by Swartzell & Rheem, Trustees, or any irregularity in the transactions between Swartzell Company and Eugene A. Smith, Inc., or between Swartzell Company and the noteholders; they committed no fraud and were guilty of no negligence, and in making the loan, they relied upon the title as it appeared of record." On this finding the lower court entered a decree dismissing the bill.

Appellants insist:

1. That Swartzell Co. had no authority to accept payment on behalf of noteholders secured by Casey trust who retained possession of their notes;

2. That the payment was, in any case, ineffective because less than the amount of the outstanding notes.

We think it may be safely stated as an established rule that payment of a promissory note to a person not in possession of it is at the peril of the payor and imposes the duty of showing by satisfactory evidence that the person to whom payment was made was authorized to receive it. Smith v. Kidd, 68 N.Y. 130, 141, 23 Am. Rep. 157; Connell v. Kaukauna, 164 Wis. 471, 159 N.W. 927, 160 N.W. 1035, Ann. Cas.1918A, 247; 2 Jones on Mortgages, 8th Ed., Secs. 1231, 1232. Where the note is secured by a trust, authority may appear expressly or impliedly from the trust instrument, and in the absence of anything therein may also be shown by the surrounding circumstances. Campbell v. Gowans, 35 Utah 268, 100 P. 397, 23 L.R.A.,N.S., 414, 19 Ann.Cas. 660; Manchester v. Sullivan, 112 Conn. 223, 152 A. 134. We must, therefore, determine in the light of this rule, whether the provision in the Casey notes making them payable *at* the office of Swartzell, Rheem and Hensey Company made them payable *to* that company as the agent of the holders of the notes to receive payment. We think not. To the contrary, the rule is that the mere designation of a place at which payment shall be made does not alter the obligation of the maker, who is still bound to see that payment is made to the legal holder. Ward v. Smith, 7 Wall. 447, 19 L.Ed. 207; Cheney v. Libby, 134 U.S. 68, 10 S.Ct. 498, 33 L.Ed. 818; Hoffmaster v. Black, 78 Ohio St. 1, 84 N.E. 423, 21 L.R.A.,N.S., 52, 125 Am.St. Rep. 679, 14 Ann.Cas. 877, and cases cited in the annotation.

Appellees rely, to the contrary of this, upon statements by us in Simpson v. Stern,[2] and in Stern v. Simpson[3]. In those cases, both involving one deed of trust, we said that certain notes payable *at* the office of Swartzell Co. were payable *to* that company. The statements, standing alone and without reference to the facts and circumstances under which they were made, may very well lead to misunderstanding, and unfortunately they were not qualified, as they should have been, by reference to the terms of the deed of trust which gave them justification and accuracy. There was in that deed a covenant that payment of principal and interest at the office of Swartzell Co. should constitute payment of the notes and authorize the trustees to release and reconvey the land without presentation or cancellation of the notes. In the argu-

---

[2] 63 App.D.C. 161, 70 F.2d 765.

[3] 67 App.D.C. 6, 88 F.2d 974.

ment of the first case all of counsel conceded that the provision in the deed we have just mentioned authorized payment of the notes to Swartzell Co. as agent for the noteholders, and it was doubtless because of that concession that we were led to make the unqualified statement in question. But there is no similar provision in the Casey deed of trust, and in the circumstances it is obvious that what was said in the Simpson case is no authority on the question here.

It is also urged in reliance upon the terms of the notes that authority may be found in that provision which extended to the maker the privilege of anticipating payment of the debt. But we are referred to no authority for this, and a search on our own part has failed to disclose any. The clause was doubtless for the benefit of the maker of the notes and, coupled as it was with the stipulation that payment should be at the office of Swartzell Co., may be considered as requiring the holders, upon notice of anticipation, to have the notes at that office on the call date. If on that date payment were tendered by the maker, it would doubtless have terminated the liability to pay subsequent interest (Cheney v. Libby, supra), but we are wholly unable to construe it, standing as it does alone, as authorizing payment to the negotiator of the notes without possession and delivery of the notes.

We turn, therefore, to the question whether either in the deed or in the facts shown here, it can be said there was either actual or apparent authority to Swartzell Co. to collect the principal debt.

*First, as to the deed of trust.*

. By its terms it described the notes secured as bearing interest at the rate of 6½% payable semi-annually, and the notes so provided on their face, but the deed of trust contained an unusual clause as follows: "and the said party of the first part does hereby further covenant that the interest on the indebtedness hereby secured shall be paid quarterly by said party of the first part, her heirs and assigns, at the office of Swartzell, Rheem and Hensey Company, Washington, District of Columbia, for the use and benefit of the respective holders of said notes when and as the interest on said notes shall become due by the terms thereof * * *."

■ ■ We think it clear that the last quoted words contemplate the payment of the interest quarterly to Swartzell Co. The purpose, obviously, was to require payment to it for later distribution to the persons to whom it had sold the notes. But if this be granted, it is not enough, as we think, to establish authority to receive the principal, for the rule sustained by a great weight of authority is that the power to collect interest is not alone power to collect principal.[4] And so we can find neither in the trust nor in the notes authority in Swartzell Co. to receive the principal debt and authorize release of the lien.

*Next, as to the surrounding facts.*

■ The finding of the lower court is that: "The plaintiffs and intervenors, or their predecessors in interest, had been customers of Swartzell, Rheem and Hensey Company for at least four years prior to August 8, 1930, and Swartzell Company during such period collected principal and interest on deed of trust notes owned by plaintiffs and intervenors and reinvested for some of plaintiffs and intervenors, and with their approval, the proceeds of such collections of principal in other deed of trust notes * * *."

The fair interpretation of this finding is that plaintiffs and intervenors as customers of Swartzell Co. had at times during a prior four-year period accepted without protest payment of principal and interest on deed of trust notes acquired by them of Swartzell Co. It is not contended by appellees that those transactions refer to notes secured under the trust in issue here. And in fact we understand it to be conceded that the collection of principal referred to in the finding was of notes of a wholly different issue, and in this view there is nothing in the finding of comfort to appellees for the reason that we cannot speculate on the conditions under which the collected notes were issued, or the circumstances which may have moved appellants to accept the principal from Swartzell Co. The mere fact that an agency to collect principal has existed in previous instances does not of itself justify a reliance by third persons on a continuing agency when possession of securities is retained by the owner. Smith v. Kidd, 68 N.Y. 130, 23 Am.Rep. 157; Ulen v. Knecttle, 50 Wyo. 94, 58 P.2d 446, 111 A.L.R. 565 and note.

---

4 Smith v. Kidd, 68 N.Y. 130, 23 Am. Rep. 157; 2 Jones on Mortgages, 8th Ed., Sec. 1231; Restatement, Agency, Sec. 71, latter part of Comment b; see numerous cases cited in Note, 111 A.L. R. 579–582.

There is nothing further in the record to indicate either an actual intention on the part of plaintiffs who had retained their notes to make Swartzell Co. their general agent or a holding out of agency which might have misled the defendants.

Because of what we have said above, we are of opinion that there is nothing in the deed of trust or in the notes or in the circumstances or course of business of the parties which will justify us in holding that Swartzell Co. was agent, actual or apparent, of the noteholders to collect their principal, and in this view we need not consider at this stage the second ground of error assigned by appellants.

But what we have said does not decide the case, for appellees insist that whether Swartzell Co. had authority to accept payment of the Casey notes on behalf of the noteholders is not the vital issue. The real issue, they say, is whether the Insurance Company, under the circumstances of this case in the absence of notice to the contrary, was justified in relying upon the record which contained the solemn declaration made in the release by Swartzell and Rheem as trustees, that the debt represented by the notes had been paid and satisfied. And this question, appellees say, should be answered in the affirmative.

But the difficulty about this is two-fold: first, Insurance Company not only admits but declares it never saw the release of the Casey trust until long after the transaction was closed, and in this aspect it could not have relied upon the assurance by the trustees of payment of the notes. In the second place, if it had inspected the registry files it would have discovered the Casey deed, still unreleased, and would have found no declaration that the notes had been paid. On the contrary, it would have found that the trustees holding the security for its own loan had taken only an inferior title. Hence, the case is in either aspect unlike Williams v. Jackson, 107 U.S. 478, 2 S.Ct. 814, 27 L.Ed. 529, where the defendant had advanced his money on the faith of a clear record.

What actually happened is perfectly obvious. Insurance Company accepted the application of Smith Co. for a loan with the understanding that the proceeds of the loan would be used to pay off an existing mortgage. Its willingness to advance its money was contingent upon the release of that mortgage to the end that the deed to secure its loan should be a first lien on the land,

and it accepted the Title Company as the medium by which to accomplish this result. Its attitude in this respect was normal and reasonable, and it took the added precaution to contract with and pay the title company for a guaranty that its purpose had been accomplished. Both Insurance Company and Title Company knew of the existence of the unpaid Casey lien, and the Title Company knew—though Insurance Company may not have known—that the Casey notes were not in possession of Swartzell Co. but were outstanding in the hands of customers of Swartzell Co., and this fact was, before the exchange of deeds, brought vividly to the attention of the Title Company when either it or Swartzell Co. at the time the release was executed drew a line through the words—"as evidenced by exhibition to the trustees, of the promissory notes secured thereby, marked paid." The logical explanation of what happened at this time is that either Title Company was satisfied that Swartzell Co. was authorized as agent of the noteholders to accept payment for them or else that, having unlimited confidence in the integrity of Swartzell Co., it believed that company would distribute the money to the noteholders and obtain their full consent and ratification of its action in accepting payment—and doubtless this would have been the course of events except for Swartzell Co.'s bankruptcy within a little more than 6 months. On this basis Title Company delivered to the Swartzell Co. the Insurance Company's money.

And so in our view the question is not, as appellees insist, whether Insurance Company had a right to rely upon the public records—because it is clear there was no such reliance—but rather, whether in the circumstances we have narrated it can escape the consequences of its own failure and that of Title Company, acting for it, to investigate and ascertain the true state of affairs. Undoubtedly, if Insurance Company itself had paid the Casey debt to Swartzell Co. without production of the notes or without a showing either of actual or of apparent authority by Swartzell Co. to accept the money, it would have acted at its peril, and in our opinion it is in no better position because it acted in this respect through the Title Company. When with knowledge of the Casey trust, it undertook to obtain a first lien to secure its loan, it was obliged to see to the legal payment of the Casey debt, and could not

avoid the obligation by reliance upon the Title Company to follow its instructions. Wynn v. Grant, 166 N.C. 39, 81 S.E. 949; Stiger v. Bent, 111 Ill. 328; Connecticut Gen. Life Ins. Co. v. Eldredge, 102 U.S. 545, 26 L.Ed. 245. Whatever relation the Title Company occupied to it in regard to other matters, as to that service it was its alter ego, and Insurance Company must answer for its default to the same extent that it would had it acted in its own behalf. We are unable, therefore, to find anything by which we can say that Insurance Company is protected under the doctrine of bona fide purchase on reliance upon a clear title of record.

What we have said in the foregoing part of this opinion in relation to the lack of authority on the part of Swartzell Co. as agent or otherwise to accept payment and give a valid acquittance on behalf of the Casey noteholders is applicable primarily to those noteholders who, unaware of the purpose of Smith ·Co. to pay off the Casey trust, retained possession of their notes and took no action of any kind to authorize payment or settlement. But, as we have said, at the time of the attempted payment various notes to the amount of $28,650 had been delivered to Swartzell Co. for collection and safekeeping. The holders of these notes, we think, made Swartzell Co. their collecting agent with authority to receive their money and cancel or deliver up their notes upon full payment of principal and interest and two months' advance interest; and if the record showed that Swartzell Co. had received full payment, the rights of these noteholders would in our opinion be foreclosed. But the record shows the contrary. The outstanding Casey notes amounted to $165,000; the interest to August 5, the date of settlement, to $2,685; and the item of additional interest to approximately $1,800, making a total debt of $169,485. In settlement of this liability Swartzell Co. accepted $118,-451.80 in cash, $40,000 in a second mortgage note, and $8,295.70 in an unsecured note of Smith Co. Presumably the balance of approximately $2,500 was assumed by Swartzell Co. itself.

If it be assumed that the relationship which Swartzell Co. then occupied to the depositing noteholders was that of collection agent only, obviously this was not payment in accordance with the provisions of the deed of trust, for an agent whose authority is limited to the collection of a debt is required to accept only that which the law· declares to be legal tender and which by common consent is treated as money and passes as such at par. Ward v. Smith, 7 Wall. 447, 19 L.Ed. 207; Federal Reserve Bank of Richmond v. Malloy, 264 U.S. 160, 44 S.Ct. 296, 68 L.Ed. 617, 31 A.L.R. 1261. And by the same token the agent is without authority to compromise by acceptance of a lesser sum. Curtis et al. v. Innerarity et al., 6 How. 146, 12 L.Ed. 380; Restatement, Agency, Sec. 72, comment a. Nor may he discharge the debt by assuming it himself. Plano Mfg. Co. v. Doyle, 17·N.D. 386, 116 N.W. 529, 17 L.R. A.,N.S., 606. If, therefore, it were necessary to dispose of this branch of the case on the record we have, we should be compelled to hold that, at least in so far as accepting the unsecured note of Smith Co. and in failing to demand and receive the total amount due, there had been no full legal payment even as to the depositing noteholders so as to discharge the lien. Whether the amount received by Swartzell Co. can be treated as part payment as to these notes is a question which will arise on proceedings ancillary to the foreclosure of the Casey trust. Since it was not argued, we express no opinion thereon.

But it is argued here that Swartzell Co. was more than a mere collecting agent and was in fact a general agent for investment for those persons, or that a general course of business indicated authority to receive something in lieu of money. There is in the record some evidence to indicate an agency broader but undetermined in its scope as to some of the noteholders. In view of the fact that the case must be remanded for further proceedings in the trial court, we think it not desirable to pass upon the question, but to leave the rights of these noteholders to be determined in subsequent proceedings at which evidence may be taken to show the extent of the authority of Swartzell Co. to represent them as general or investment agents. The question would turn upon whether there was either express authority or in all the circumstances implied authority in Swartzell Co. to receive in their behalf less than full payment or payment otherwise than in money.

This then leaves for consideration only the status of appellee Julius I. Peyser. Peyser's connection with the controversy grows out of the fact that after the transactions we have been discussing,

and subsequent to the recordation of all the deeds, including the deed of release of the Casey trust, and at a time when the record showed the Insurance Company debt to be secured by a first trust, he acquired for value and without notice the $40,000 second trust note referred to above as having been made by Cutler subsequent to the execution and delivery of the Insurance Company trust. He is, therefore, a holder in due course of the $40,000 note. Having relied upon the record title in good faith, he is not affected by the irregularity in making the release. Williams v. Jackson, 107 U.S. 478, 2 S.Ct. 814, 27 L.Ed. 529. But having taken his note subject to a prior indebtedness of $125,000, he is not entitled to be put in any better position now than he was at the time of his investment. Peyser's lien should therefore be placed inferior to claims amounting to $125,000, no more and no less. If the claims for principal and interest made by Casey noteholders exceed that amount, Peyser should have priority over the excess. If such claims are less than $125,000, then Insurance Company should have priority over Peyser to the extent of the difference.

Since the Insurance Company made its investment on the faith of an unauthorized release of the Casey trust, and without making due investigation, the loss must fall on it. The case is not one where the burden must fall on one of two innocent persons, as was true in Rhoderick v. Swartzell[5] and Simpson v. Stern.[6] Counsel correctly say those cases are strikingly like this one, but there is at least one decisive difference. In those cases the Swartzell noteholders had expressly consented to that corporation's accepting payment for them and releasing the security. And so we said that, the loss having been caused by the knavery of their agent, they would not be heard to impose its consequences upon another equally as innocent as themselves. In the case at hand, however, the noteholders neither actually nor apparently authorized Swartzell Co. to receive payment, and the Insurance Company's unfortunate plight is due to its failure to observe this difference, which we think it was in duty bound to do in any case and particularly in this case where, with knowledge of the fact that it was payor of a debt, it did not make sure of the authority of the person with whom it dealt.

The case is reversed and remanded to the District Court for further proceedings in accordance with this opinion.

Reversed and Remanded.

### On Petition for Rehearing.

We find nothing in the argument on the main aspects of this case that has not already been considered and disposed of and therefore nothing to justify a rehearing or a modification of the opinion.

Two matters not considered in the former opinion are now urged, as follows:

First. That the record on the appeal incorrectly showed the relation of Peyser in the transaction, referred to and disposed of in the latter part of the opinion. In the petition for rehearing it is now for the first time charged that Peyser's deed of trust was foreclosed in 1932, after this suit was commenced, but before the hearing in the lower court, and copies of deeds are filed showing that at the foreclosure sale under Peyser's deed the property was purchased by Goldberg for a recited consideration of $41,500, payment of which was acknowledged in the deed; that subsequently Goldberg conveyed to Peyser and Peyser then conveyed to a corporation and the corporation in turn conveyed to trustees to secure notes aggregating $41,500 payable to Peyser's order. As the result of these facts, appellees say Peyser's lien was discharged before the case was heard below and that judgment should be modified to allow proof of these matters in the lower court with a view to a modification of the decree which would have to be entered upon the mandate of this court. Granting that the knowledge of the Peyser transactions came to appellees, as they claim, subsequent to the decision of this court, this would not justify us now in changing our decision except to modify the judgment of this court by providing that it shall be without prejudice to appellees' rights, if they shall be so advised, to file a bill of review in the trial court to the end that that court may determine whether a bill of review in relation to that matter should be allowed or whether appellees were guilty of laches in presenting it. In re Gamewell Fire-Alarm Tel. Co., 1 Cir., 73 F. 908. The rule on this subject seems to us to be stated in Southard v. Russell, 16 How. 547, 14 L.Ed. 1052, to which we refer and as a result of which the judgment of this court will be—as to the Peyser claim—without prejudice to the right of appellees on the

---

[5] 62 App.D.C. 180, 65 F.2d 813.

[6] 63 App.D.C. 161, 70 F.2d 765.

**537**

ground of newly discovered evidence to apply to the court below for leave to file a bill of review.

Second. It is now for the first time urged that some of the noteholders of the Casey trust have recently received dividends from the trustees in bankruptcy of Swartzell Co. and that the judgment of this court should be modified so as to make proof of this fact evidence of a ratification of the agency to receive payment. This suit was instituted as a class suit, and the record in this court showed that only a minority of the noteholders had intervened. As to some of these we said that certain questions raised as to them affecting the agency of Swartzell Co. would arise on proceedings ancillary to the foreclosure of the Casey trust. In that proceeding if it shall appear that any of the noteholders have ratified the action of Swartzell Co. in receiving payment, as to which we express no opinion, their rights may be determined accordingly.

In their answer to the petition for rehearing appellants urge that determination of the rights of the respective noteholders might preferably be settled prior to a foreclosure sale so that each one would be advised whether he should protect his interest by making a bid at the sale. Speers Sand & Clay Works v. American Trust Company, 4 Cir., 20 F.2d 333. On remand the court below may, in its discretion, determine this question before the sale, that is to say, is the inquiry open or have appellees failed to make timely allegation and proof on this issue?—And, if open, did the Casey noteholders who filed claims against the estate of Swartzell Co. and received dividends thereby ratify the attempted agency of Swartzell Co. to receive payment for them, as the result of which they should be excluded from the class of noteholders who filed no claims and received no payments?

Petition for rehearing denied; mandate modified as stated above.