Ruth WHITEHEAD, Plaintiff,

v.

AMERICAN SECURITY AND TRUST
COMPANY, Defendant and Third-
Party Plaintiff,

v.

Ned WHITEHEAD

and

Whitehead & Co., Inc., a corporation,
Third-Party Defendants.

Civ. A. No. 815-57.

United States District Court
District of Columbia.

Dec. 9, 1959.

Rufus King, Rice & King, Washington,
D. C., for plaintiff.

Thomas S. Jackson, Jackson, Gray &
Jackson, Washington, D. C., for defend-
ant and third-party plaintiff.

I. Martin Leavitt, Steptoe & Johnson, Washington, D. C., for third-party defendants.

MORRIS, District Judge.

This is a suit for payment of treasurer's check No. 184–364, executed by defendant bank on March 5, 1954, in the amount of $6,000, which, when presented for payment by plaintiff on or about November 23, 1956, was dishonored by the defendant. The facts, as revealed by evidence and by stipulation of the parties, are as follows: On or about March 5, 1954, the corporate third-party defendant deposited some $21,000 with the defendant bank, and by its president, Ned Whitehead, individual third-party defendant, purchased the treasurer's check in question, payable to the order of Jorge L. Cordova. This payee, at a date unknown, negotiated the check by special endorsement and delivery to an attorney, Kyle C. Grainger, who was a mere agent or conduit of title, and who paid nothing for the check. Grainger, at a date unknown, negotiated the check by special endorsement and delivery to "Harold J. Otley, County Clerk of the Superior Court of the State of California, in and for the County of Los Angeles." The clerk paid nothing for the check, and took it to hold in escrow pending the outcome of Case No. 632–510 in the California court. At a date unknown, but subsequent to the date of the judgment of the California court, October 11, 1956, the clerk, without his endorsement, delivered said check to the plaintiff bearing the stamped endorsement "Pay to any bank or banker, H. L. Byram, Treasurer, County of Los Angeles," in compliance with the above mentioned judgment, which decreed:

"That the check * * * is the property of plaintiff herein, and plaintiff is entitled to the possession of said check and to the money which is represented by said check, and to the proceeds of said check when same is cashed or paid by the maker or any other person. That no other person has any right, title or interest in and to said check, or in the proceeds of said check and that said Whitehead and Company, Inc., in particular have [sic] no interest in said check when cashed, or the monies represented by said check.

" * * * that the County Clerk of the Superior Court of the County of Los Angeles, State of California, be and he hereby is hereby [sic] directed to turn over said check or the monies represented by said check to the plaintiff, Ruth Whitehead."

The check was duly endorsed by the plaintiff and delivered for collection to the Security First National Bank of Los Angeles, which bank, on November 21, 1956, sent the check to the defendant for payment. Defendant dishonored the check and caused it to be returned unpaid and marked "Payment Stopped."

On July 14, 1954, Ned Whitehead represented to the defendant that the check in question had been lost. Upon his furnishing it an indemnity bond, defendant issued a "duplicate" check, No. 187–402, bearing date of July 14, 1954, in the amount of $6,000, payable to Jorge Cordova (stipulated to be the same Jorge L. Cordova to whom the original check was made payable). This latter or "duplicate" check, bearing special endorsement to Ned Whitehead by Cordova and the blank endorsement of Ned Whitehead was presented to and paid by the defendant on August 5, 1954, to Ned Whitehead. Never, after July 14, 1954, did the corporate or individual third-party defendant have funds, except in nominal amount, in the defendant bank, and after August 5, 1954, defendant had no funds on deposit by either of such third-party defendants with which to pay the check herein involved.

Inasmuch as the check in question is a negotiable instrument, the rights of the parties must be determined by application of the Negotiable Instruments Law of the District of Columbia.[1] By

1. District of Columbia Code (1951), Secs. 28–101—28–1011.

this law, personal defenses between prior parties to a negotiable instrument, while good against a mere holder or transferee, may not be asserted against a holder in due course. It, therefore, becomes necessary at the outset to determine whether the plaintiff enjoys the status of a holder in due course. Section 28–101 defines a holder as "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Section 28–402, provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face.

"Second. That he became the holder of it before it was over due, and without notice that it had been previously dishonored, if such was the fact.

"Third. That he took it in good faith and for value.

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 28–305 provides:

"A special indorsement specifies the person to whom or to whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument. An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer and may be negotiated by delivery."

Applying the above quoted sections of the District of Columbia Code (1951) to the circumstances under which the plaintiff received the check, we find that the check was specially endorsed to the clerk of the California court, and without his endorsement, it could not be further negotiated. The subsequent stamped endorsement of the Los Angeles County Treasurer could only operate as a transfer of title, placing plaintiff in the position of a transferee. Section 28–320 [2] gives the plaintiff the right to demand the endorsement of the court clerk, but for the purpose of determining whether she is a holder in due course, the negotiation thereby accomplished would be effective as of a date yet in the future, a date subsequent to her knowledge of the defect in the title of the person negotiating it and of its having been previously dishonored.

Payment of the basic obligation by the defendant bank by reason of the fraud perpetrated by Ned Whitehead, in which the payee of the original check joined at least to the extent of specially endorsing the "duplicate" check to Ned Whitehead, is certainly a good defense as to such payee of the original check. Section 28–408 provides that "in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable." Because none of the prior holders of this check took it for value, none were holders in due course, and plaintiff's status is not aided by reason of the further provision of Section 28–408 that "a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." Moreover, inasmuch as she is not the payee or endorsee of an order instrument, nor the bearer of a bearer instrument, plaintiff does not qualify as a "holder" of the check in question. As plaintiff cannot qualify as a holder in due

---

2. "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferrer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

course, she cannot escape the defense that defendant's obligation to the maker and payee of the check in question has been paid.

Plaintiff contends that the California judgment, which is entitled to full faith and credit, conclusively establishes her right to the check and its proceeds against all the parties who might otherwise have asserted an interest in it. With this contention, I have no disagreement. The rights of the defendant bank were not litigated in that suit, wherein it was not a party, and defendant is not here asserting any interest in the check, but rather defending against the payment of it on the ground that it has discharged the obligation incurred by such check.

■ It is unusual that the plaintiff and the defendant bank each seeks to rely upon the doctrine of equitable estoppel that, where one of two innocent persons must suffer loss, the loss must be borne by the party who made the loss possible. Plaintiff asserts that the loss was caused by Ned Whitehead's fraud and by the bank's reliance on his false representations. Defendant, on the other hand, asserts that the loss was occasioned by plaintiff's failure (1) to take steps to notify the bank of her claim to the instrument, or (2) to see that the instrument was presented for payment by the court clerk who had possession of it. The Court is of the opinion that all of these elements contributed to the loss, and relief cannot be had by either party by reliance upon the doctrine in question.

Inasmuch as plaintiff has been found not to be a holder in due course, the defense interposed by defendant that the check was not timely presented for payment, and plaintiff's claim that a treasurer's check of a bank cannot become over due, need not be resolved.

Judgment will be entered in favor of the defendant and reluctantly in favor of the third-party defendants, who only become liable in the event of a judgment in favor of plaintiff against the defendant bank.

Counsel will prepare an appropriate order carrying this decision into effect.