Ruth WHITEHEAD, Appellant,

v.

AMERICAN SECURITY AND TRUST COMPANY, Appellee.

AMERICAN SECURITY AND TRUST COMPANY, Appellant,

v.

Ned WHITEHEAD, and Whitehead and Company, Inc., Appellees.

Nos. 15582, 15595.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 29, 1960.

Decided Dec. 1, 1960.

Petition for Rehearing En Banc Denied
Jan. 10, 1961.

Wilbur K. Miller, Chief Judge, dissented in part.

Mr. Rufus King, Washington, D. C., with whom Mr. Downey Rice, Washington, D. C., was on the brief, for appellant in No. 15582.

Mr. Thomas S. Jackson, Washington, D. C., with whom Messrs. Robert M. Gray, John W. Jackson, and Steven A. Winkelman, Washington, D. C., were on the brief, for appellee in No. 15582 and appellant in No. 15595.

Mr. Laidler B. Mackall, Washington, D. C., for appellees in No. 15595.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

In the District Court Ruth Whitehead, the appellant in No. 15582, unsuccessfully sued the American Security and Trust Company, appellee, herein also referred to as the bank, upon its treasurer's check issued in the amount of $6,000 under date of March 5, 1954, to the order of one Cordova. The latter had endorsed the check to Kyle C. Grainger, a California attorney, who had endorsed it without recourse to Harold J. Ostly, County Clerk and Clerk of the Superior Court of California, in and for the County of Los Angeles. Pursuant to provisions of the California Code, Ostly turned the check over to the County Treasurer of the County of Los Angeles who held it in his official capacity subject to the outcome of an action brought by appellant in the Los Angeles County Superior Court against Cordova, Ned Whitehead, the ex-husband of appellant, and Whitehead and Company, Inc. Ostly, however, did not endorse the instrument.

The Superior Court on October 11, 1956, entered a judgment that our appellant, Ruth Whitehead, "is entitled to the possession of said check and to the money which is represented by said check, and to the proceeds of said check when same is cashed or paid by the maker or any other person."

Pursuant to this judgment the check was delivered to appellant with the endorsement, "Pay to any bank or banker, H. L. Byram, Treasurer, County of Los Angeles." Appellant endorsed the check to the Security First National Bank of Los Angeles for collection, which endorsed it and presented it through banking channels to appellee bank in November 1956. Appellee refused to honor the check and returned it marked "Payment Stopped," whereupon appellant sued appellee for the amount called for on the check.

The foregoing facts are undisputed. There was also evidence which amply supports the finding of the District Court, set forth in a Memorandum, that the bank had been the victim of a fraud perpetrated by Ned Whitehead and participated in by Cordova, the payee of the check of March 5, 1954. Upon the false representation that the check of March 5, 1954, had been lost and by the posting of a lost-instrument indemnity bond the bank had been induced on July 14, 1954, to issue a duplicate treasurer's check of $6,000. This duplicate check was paid by the bank to Ned Whitehead August 5, 1954, Cordova, its payee, having endorsed it to Whitehead.

■ The District Court gave judgment for the bank. The court reasoned that, though the check of March 5, 1954, was a negotiable instrument the missing endorsement of Ostly prevented plaintiff from occupying the position of a holder in due course and, accordingly, the defense "that defendant's obligation to the maker and payee of the check in question has been paid," was good. We are not in agreement with this. Though we were to assume that appellant was not a holder in due course, the defense of payment rests upon the payment of the duplicate check of July 14, 1954. This payment was due to a fraud upon the bank by Ned Whitehead, who had supplied the funds for the check of March 5, 1954, and was not a payment in due course. See Pittsburgh-Westmoreland Coal Co. v. Kerr, 1917, 220 N.Y. 137, 115 N.E. 465; In re Seaman's Will, 1923, 205 App.Div. 681, 200 N.Y.S. 504. For this reason the reliance upon 28 D.C. Code, § 401 (1951), which provides that "payment [to the holder thereof] in due course discharges the instrument," is misplaced. The situation is akin to one where a prior holder of a note receives payment from the maker who later seeks to interpose payment and discharge as a defense when sued by the party actually holding the instrument at the time the payment is made. It is settled that in such case the loss does not fall on the holder unless the party to whom payment is made has authority to receive payment or unless the circumstances give rise to an estoppel. See, e. g., Davis v. Casey, 70 App.D.C. 27, 103 F.2d 529;

Jones v. Hamilton Nat. Bank, D.C.Mun. App.1954, 109 A.2d 135; Eastern Acceptance Corp. v. Henry, D.C.Mun.App. 1948, 62 A.2d 309.

■ Appellant was entirely innocent of the fraud. She was the owner for value of the check of March 5, 1954,[1] issued by the bank as its own promise to pay. As against her the loss of the $6,000 is required under principles of equity to be borne by the bank. Appellant was without opportunity to protect herself from the fraud. The bank, on the other hand, did undertake to protect itself by requiring an indemnity bond prior to issuing the duplicate instrument under section 28–410 of our Code. While this did not create liability on the part of the bank to appellant, it bears upon the equitable principle referred to; for, although also innocent of the fraud the bank participated in conduct which led to payment of the duplicate check. Since the obligation of the bank to appellant as owner of the March 5 check was not discharged by this fraudulently induced payment, with the consequence that one of two innocent parties, the appellant and the bank, must suffer the loss, equity casts it, as stated in Foley v. Smith, 73 U.S. 492, 494, 18 L. Ed. 931, upon the one "who has most trusted the party through whom the loss came." Accord, Counselman v. Pitzer, 65 App.D.C. 71, 79 F.2d 707, certiorari denied 296 U.S. 650, 56 S.Ct. 310, 80 L.Ed. 463; Arms & Drury, Inc. v. Columbia Title Ins. Co., 62 App.D.C. 178, 65 F.2d 811. In this case that is the bank.[2]

1. The support of her ownership by a judgment the validity of which is unchallenged imports consideration.

2. The application of this principle is of course unaffected by the fact that the bank may not in the end, due to the indemnity bond, suffer any loss.

That the County officials may not have handled this obligation of the bank in strict accordance with the provisions of the California Code applicable to money in the hands of officials and subject to the outcome of litigation, seems immaterial to the issue between the appellant

and the appellee bank. The California judgment directed the County Clerk "to turn over said check or the monies represented by said check" to appellant, and that judgment has not been questioned in this case. Moreover, any lack of compliance by the County officials with the provisions of the California Code gave rise to no equity in appellee bank which operates in its favor as against appellant. She was as innocent of such possible non-compliance as was appellee, and, in any event, the manner in which the County officials went about their du-

We have considered other defenses raised. One of these is based on section 28–1004 of our Code, which provides:

"Where a check or other instrument payable on demand at any bank or trust company doing business in the District of Columbia is presented for payment more than one year from its date, such bank or trust company may, unless expressly instructed by the drawer or maker to pay the same, refuse payment thereof, and no liability shall thereby be incurred to the drawer or maker for dishonoring the instrument by nonpayment."

We hold that this provision does not apply to a treasurer's check of the bank to which it is presented, such as the check of March 5, 1954. The seemingly broad coverage of the section is narrowed by language which shows that it applies only to instruments of a drawer or maker other than the bank upon which it is drawn. It is designed to protect a drawer or maker who might not be in a position to make good on an instrument drawn or made more than a year prior to its presentation, and also to protect the bank from liability to a drawer or maker other than the bank itself. Where, however, the maker is the bank itself, as in this case, it cannot simply rely upon this section in refusing to pay its own treasurer's check not presented within one year. Such an instrument may be treated by the holder as a promissory note which is an unconditional promise in writing, made by one person to another, signed by the maker, engaging to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer. Steinmetz v. Schultz, 1932, 59 S.D. 603, 241 N.W. 734; and see Ross v. Peck Iron & Metal Co., 4 Cir., 1959, 264 F.2d 262, 268–269.

Though section 28–1004 is not a defense in this case, laches on the part of a holder for value may nevertheless be a defense. If unreasonable delay in presenting a treasurer's check for payment prejudices the maker bank, then such a holder may be precluded from recovery. But the period of delay in the present case must be considered as only the time between March 5, 1954, and the time of issuance of the duplicate check of July 14, 1954, or at the latest August 5, 1954, when the latter check was cashed; for it was during this period that the transaction occurred which led to refusal by the bank to honor the check of March 5. Failure to present the check during these months was not unreasonable delay, and was not the cause of prejudice to the bank. If the bank had been prejudiced by this delay it presumably would not have issued the new check during this period. It cannot be said on this record that had the original check been presented at any time during these months it would not have been honored. The longer delay which ensued while the California litigation took its course has no significance, for no event occurring during that passage of time gave rise to the dishonor of the check of March 5 when it was finally presented. The reason was rather that the duplicate and fraudulently procured check of July 14 had been issued and paid.

The judgment in No. 15582 will be reversed and the case remanded with directions to enter judgment for appellant.

In No. 15595 the bank appeals from the judgment [3] in favor of the third-party defendants Ned Whitehead and Whitehead and Company, Inc. The latter have moved to dismiss this appeal as having been taken out of time, that is, more than thirty days after entry of the judgment. That the appeal was not taken by notice filed within the thirty

ties had no effect upon the obligation of the bank to appellant, since we do not decide that appellant became a holder of the check in due course.

3. As appears *infra* the main action and the third-party complaint were disposed of in separate paragraphs of one judgment.

days required by Rule 73(a), Fed.R.Civ. P., 28 U.S.C.A., is undisputed. The inference from the circumstances is that the bank did not intend to appeal unless appellant appealed from the judgment in favor of the bank in the main action, and appellant did not file her notice of appeal from that judgment until January 12, 1960. The judgment had been entered December 14, 1959, and the thirty-day period accordingly expired January 13, 1960. The bank noted its appeal January 15, 1960, two days late.

■ Since the filing of notice of appeal within time[4] is jurisdictional, Slater v. Peyser, 91 U.S.App.D.C. 314, 200 F.2d 360; Randolph v. Randolph, 91 U.S.App.D.C. 170, 198 F.2d 956; Bradley v. Pace, 87 U.S.App.D.C. 11, 183 F.2d 806, the appeal must be dismissed.

■ We are unable to accept the position urged by the bank that the appellant's notice of appeal brought the whole judgment to this court for review on appeal; that is, that there was no need for the bank to appeal from that part of the judgment rendered in favor of the third-party defendants. Rule 73(b) provides that the notice of appeal "shall specify the parties taking the appeal; [and] shall designate the judgment or part thereof appealed from." The operative part of the judgment is in two separate paragraphs of a single judgment and reads as follows:

"Adjudged and Ordered, that the defendant, American Security and Trust Company have judgment herein and the Complaint be and it is hereby dismissed; and it is further

"Adjudged and Ordered, that the third-party defendants, Ned Whitehead and Whitehead & Co., Inc., shall have judgment, and the Third-Party Complaint be and the same is hereby dismissed."

The notice of appeal filed by appellant is in the following terms:

"Notice is hereby given that Ruth Whitehead, plaintiff above named, hereby appeals to the United States Court of Appeals for the District of Columbia from the final judgment entered in this action in favor of the American Security and Trust Company, defendant, on December 14, 1959."

It will be seen that this notice specified that the appeal was taken by Ruth Whitehead, not by the bank, and the part of the judgment designated was the final judgment entered "in favor of the American Security and Trust Company." No designation was made of the portions of the judgment entered for Ned Whitehead and Whitehead and Company, Inc., and dismissing the third-party complaint of the bank against them. In this factual situation we did not obtain jurisdiction to review those portions of the judgment. Gannon v. American Airlines, Inc., 10 Cir., 1958, 251 F.2d 476.

In No. 15595 the appeal will be dismissed for lack of jurisdiction.

Reversed in No. 15582;

Dismissed in No. 15595.

WILBUR K. MILLER, Chief Judge (dissenting in No. 15,582).

The American Security and Trust Company was not a party to the suit in the California court, and the record before us tells us very little about that proceeding. We know that the check of March 5, 1954, was endorsed by the payee to Kyle C. Grainger, a California attorney, who paid nothing for it. Grainger endorsed the instrument, without recourse, to Harold J. Ostly, the Clerk of the California court, who also paid nothing for it. We are not told why the check was endorsed to the Clerk; presumably he was to hold it in escrow pending the outcome of certain litigation in his court.

Nor do we know when the check was endorsed to the Clerk. If that was before the issuance of the duplicate on July 14, 1954, (as it probably was) and if the Clerk had promptly cashed the

---

4. We have no question in this case under the excusable neglect provisions of that Rul?

check so the proceeds could be held in escrow (as he should have done), the duplicate would not have been issued, and this lawsuit would not have arisen.

Instead of that, the Clerk or the County Treasurer held the check itself until October, 1956,—more than two years and seven months after its date—and then Ostly delivered it to the appellant, still without his endorsement, but with the following stamped thereon: "Pay to the order of any bank. Prior endorsements guaranteed. H. L. Byram, Treasurer, County of Los Angeles."

The majority opinion says, "Pursuant to provisions of the California Code, Ostly turned the check over to the County Treasurer of the County of Los Angeles who held it in his official capacity subject to the outcome of an action brought by appellant * * *. Ostly, however, did not endorse the instrument."

I suggest the majority err in saying Ostly delivered the check to the County Treasurer "[p]ursuant to provisions of the California Code" and in saying the Treasurer held it in his official capacity. The California Code provisions to which the majority apparently refer were quoted in the appellant's brief. I reproduce .them in the margin.[1] From these statutes, it will be observed that

money deposited with the clerk or judge of any court "shall be forthwith deposited" with the treasurer. This provision does not authorize the treasurer to receive and hold—perhaps indefinitely —a check endorsed to but unendorsed by the clerk, nor does it authorize the handling of any check in that fashion. On the contrary, the statute clearly contemplates that any check delivered to a clerk or judge shall be cashed and the proceeds deposited with the treasurer. Plainly, the Code does not authorize the careless conduct of which these officials were guilty.

For the same reason, I suggest the Treasurer was not authorized to, and did not, hold the check "in his official capacity." The statute does not authorize him to hold a check in escrow or otherwise, as I have said. It does not appear that the California court directed either the Clerk or the Treasurer to hold the check itself; and it is inconceivable to me that the court would direct that the check be physically held—particularly for a period of years and without notice to the American Security and Trust Company. Mrs. Whitehead was not innocent in these matters; she was the litigant at whose instance the court officials acted, and should have seen to it

1. " 'When any money is deposited with the clerk or judge of any court pursuant to any action or proceeding in the court, or pursuant to any order, decree, or judgment of the Court, or when any money is to be paid to the treasurer pursuant to any provision of this title or the Code of Civil Procedure, *such money shall be forthwith deposited with such treasurer* and a duplicate receipt of the treasurer for it shall be filed with the auditor. The certificate of the auditor that a duplicate receipt has been filed is necessary before the clerk, judge, or party required to deposit the money is entitled to a discharge of the obligation imposed upon him to make the deposit.

" 'When any money so deposited is to be withdrawn or paid out, the order directing the payment or withdrawal shall require the auditor to draw his warrant for it *and the treasurer to pay it* * * *' California Anno.Government

Code (West, 1955), Tit. 8, § 68084. (Emphasis supplied.)"

" 'The county treasurer shall receive and keep safely all monies belonging to the county and all other money directed by law to be paid to him *and apply it and pay it out,* rendering the account as required by law.' Ibid., Tit. 3 § 27000. (Emphasis supplied.)"

" 'Whenever *money* is paid into or deposited in the Court, the same must be delivered to the clerk, or, if there be no clerk, to the judge, in person, or to such of the clerk's deputies as shall be specially authorized by his appointment in writing to receive the same * * * The judge, clerk, or such deputy clerk, *must, unless otherwise directed by law, deposit such money with the county treasurer, to be held by him subject to the order of the court* * * *' California Anno.Code Civ.Procedure (West, 1954), Tit. 7, § 573. (Emphasis supplied.)"

288

that they acted properly. She should be charged with their omissions.

The foregoing considerations are to be taken into account, I think, in determining whether "the loss of the $6,000 is required under principles of equity to be borne by the bank," as the majority say.

For the reasons set forth by the late District Judge James W. Morris in his excellent opinion finding for the American Security and Trust Company,[2] and because of the circumstances outlined herein, I would affirm.

2. Whitehead v. American Security & Trust Co., D.C.D.C.1959, 188 F.Supp. 589.