**EASTERN ACCEPTANCE CORPORATION v. HENRY.**

No. 700.

Municipal Court of Appeals for the District of Columbia.

Nov. 4, 1948.

Norman E. Sill, of Washington, D. C., for appellant.

George E. C. Hayes, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This was a suit by the holder against the maker of a negotiable promissory note. Decision of the case turns entirely upon whether plaintiff was a holder in due course within the meaning of the Uniform Negotiable Instruments Law, in force in the District of Columbia,[1] and thus took the note free from defenses available to the maker against the payee. The case was tried without a jury, and the trial court made a general finding for defendant. Plaintiff appeals.

The transaction was initiated November 8, 1946, when defendant made a written contract with Patterson-Caulfield Corp., whereby it was agreed that the corporation would install for defendant certain storm windows, screens and ventilators. The contract was to be completed within from three to six weeks "for a cash sum of $575", "payable $18.85 monthly for 36 months"—the first payment not to fall due before May 8, 1947. The note sued on was signed by defendant, dated November 22, 1946, payable to the order of Patterson-Caulfield Corp. and was in the amount of $678.50, payment "beginning in 62 days." It was witnessed by the same officer of the Patterson-Caulfield Corp. who had signed the contract. Emphasis is laid upon the fact that the note, which was on a printed form, was marked payable at the office of plaintiff at its Washington address. The note bore two endorsements, both without recourse, the first to the order of the United Clay Products Company, signed by the office manager of the Patterson-Caulfield Corp., and the second signed by an officer of the United Clay Products Company and payable to the order of plaintiff.

An official of plaintiff testified that plaintiff acquired the note November 22, 1946, the day it was made, and that plaintiff took the note in good faith and for value and at the time had no notice of any infirmity in the instrument or the title of the person negotiating it. He further testified that prior to suit payments up to November 1947, totaling $188.50, had been made, leaving a balance due of $490, the amount sued for.

Defendant admitted the genuineness of the note, but denied making the payments claimed by plaintiff, and testified that before the first payment was due under his contract with the Patterson-Caulfield Corp. he had paid the entire amount due under the contract directly to that corporation. Over the objection of plaintiff, the trial court admitted in evidence two checks from defendant to Patterson-Caulfield Corp., the first dated March 13, 1947, for $100, and the second dated April 25, 1947, for $475. Upon this evidence, it was the position of defendant that under his contract he had two alternative ways of paying the obligation and that since he had paid the full "cash price" before the date fixed for the first payment in his contract, he was not liable on the promissory note held by plaintiff. Defendant urged further, that there was such a close association between plaintiff and Patterson-Caulfield Corp. that plaintiff was not a holder in due course of the note. The evidence of close association relied upon was prin-

---

[1] Code 1940, § 28—402.

cipally that the note form was supplied by plaintiff and that the note was made payable at its office, and further that plaintiff had not notified defendant that it held the note until shortly before suit was brought in November 1947.

■ We have concluded that the position of defendant is not supported by any substantial evidence, and hence that the judgment must be reversed. Defendant offered no explanation why, after he signed a contract November 8 providing that payments thereon would not fall due earlier than May 8, 1947, he nevertheless signed a note on November 22, 1946, providing that monthly payments should begin in 62 days, or on January 23, 1947. He conceded signing the note. Defendant also complains that since he did not make the ten installment payments received by plaintiff, plaintiff should have explained how they were made. The record, however, merely recites that plaintiff's witness testified that so far as his company's records indicated such payments were made by defendant. Since plaintiff received payments on the note until shortly before suit was filed, we do not believe any inference can be drawn from the fact that plaintiff did not notify defendant that it was the holder of the note.

Defendant relies most strongly upon Palmer v. Associates Discount Corporation, 74 App.D.C. 386, 124 F.2d 225, wherein it was held that the plaintiff in that case was not a holder in due course. There, as here, the note was made payable at the office of the finance company, but there were various other factors leading to the conclusion that the finance company was not a holder in due course. The principal factor was that since no testimony had been offered as to the date of the purchase of the note by the finance company the evidence could have been construed to mean that it presented the note for payment as agent, which was refused, and then purchased the note subsequently. Under such circumstances, the finance company, of course, was not a holder in due course. There is no such evidence in the present case.

■ We have examined the other cases cited by defendant and find that each contains important distinguishing features. For example, in Catlin v. Reed, 141 Okl. 14, 283 P. 549, 67 A.L.R. 1410, the note involved was made payable at the office of the payee, and it was subsequently sold to another party, who did not notify the maker that he was the holder. The court properly held that the holder could not complain when the maker continued making the payments to the payee, as provided by the note. A totally different situation exists here where defendant, after signing a note payable at the office of plaintiff, claims he made payments instead to the payee. Had he made the payments to plaintiff, as provided in the note, he would have had no cause for complaint. Payment of a note to a person not in possession of it is at the payer's peril.[2]

■ While knowledge of an infirmity in a negotiable instrument may be established by circumstantial evidence, it has been well said that an endorsee's bad faith or fraud in acquiring a negotiable note can never be assumed but must be shown by clear and unequivocal testimony and mere suspicion is insufficient to upset the proof offered by plaintiff that it was a holder in due course.[3] It appears clear from defendant's evidence that he has a cause of complaint against the company with which he dealt, but we must hold that plaintiff established that it was a holder in due course of the note sued on and hence, under the Negotiable Instruments Law, that it took the instrument free from defenses available between the immediate parties.

Reversed, with instructions to enter judgment for plaintiff.

---

[2] Davis v. Casey, 70 App.D.C. 27, 103 F.2d 529; see also Uniform Laws Annotated, Negotiable Instruments, § 119-141, and cases there cited.

[3] Hudson County Nat. Bank v. Alexander Furs, 133 N.J.L. 256, 44 A.2d 73.